United States District Court
Southern District of Texas
FILED

JAN 1 4 2005

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| Marie Cruz Garcia | § | |
|     Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. B-03-CV-231 |
| | § | |
| R.E.E., INC. | § | |
| d/b/a McDonalds | § | |
| A Texas Corporation | § | |
|     Defendant. | § | |

## MOTION OF DEFENDANT, R.E.E., INC. d/b/a MCDONALDS, FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

**TO THE HONORABLE DISTRICT COURT:**

Defendant, R.E.E., Inc. d/b/a McDonald's, ("Defendant") asks the Court to render summary judgment against Plaintiff, Maria Cruz Garcia, ("Plaintiff") on the grounds that Plaintiff has not suffered any adverse employment action, among other things.

### I.
### STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

1. This is a civil lawsuit involving Title VII claims. Some discovery has been conducted. The case is set for trial on the Court's April docket.

### II.
### STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT

2. Plaintiff has sued Defendant under Title VII of the Civil Rights Act of 1964 (Title VII) and the Texas Commission on Human Rights Act (TCHRA) alleging national origin and/or race, and gender discrimination (sexual harassment), retaliation, and constructive discharge. She also alleges race and/or national origin discrimination under 42 U.S.C. § 1981 as well as state law claims of negligence, intentional infliction of emotional distress, defamation, and civil conspiracy.

## III.
## STANDARD OF REVIEW

3.  Summary judgment is proper when the pleadings, depositions, answers to discovery and affidavits, if any, demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgement as a matter of law. Fed.R.Civ.Pro. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). Defendant asserts summary judgment is proper because no genuine issue of material fact exists to support at least one essential element of each of the claims Plaintiff has made.

4.  Once the moving party has made an initial showing, the burden is on the nonmoving party to offer evidence sufficient to establish the existence of essential elements of the party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Assertions and conclusory allegations are insufficient; the nonmoving party cannot prevent summary judgment unless it provides specific facts that demonstrate the existence of a genuine issue of material fact such that a jury might return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). A dispute about a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. All evidence and inferences "must be viewed in the light most favorable to the party opposing the motion." *Marshall v. Victoria Transp. Co.*, 603 F.2d 1122, 1123 (5th Cir. 1979). However, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## IV.
## STATEMENT OF THE CASE

5.  Plaintiff, a Mexican national, was hired as a kitchen helper by Defendant in July 2001.

Initially, she was supervised by store manager Ruben Saldivar, who was bilingual. Plaintiff has limited education. *See* Plaintiff's Deposition at 15:5-8 (Subsequent cites to Plaintiff's Deposition will be referenced "Garcia"). Plaintiff does not speak or read English and reads only a little Spanish. Garcia 14:7-21; 33:15-17. Saldivar worked closely with her, communicating in Spanish. Garcia 32:16-24; 33:4-7. Although Plaintiff eventually became a swing manager, she was never left in charge of the entire restaurant. Saldivar would ensure that either he or another manager who spoke English was also working. Garcia at 34:14-24; 34:25 - 35:5.

6.  Under Saldivar's close supervision, Plaintiff contends she was able to function well. Garcia 29:11 - 30:5; 30:8-10. When Saldivar transferred to another store, Jessica Torres ("Torres"), who is also Hispanic and bilingual, became the store manager.

7.  In June of 2002, Torres allowed Plaintiff to carry her cell phone while working because Plaintiff was expecting a call regarding a sick relative. Garcia 5. Plaintiff claims she placed her cell phone behind the counter, in an area where employees prepare food orders for drive-through customers. Garcia 41:22 - 42:14. When Plaintiff could not find her cell phone, she complained it had been stolen, and accused co-workers, Reynaldo Urista and Reynaldo Morales. Garcia 43:15 - 44:5.

8.  On July 12, 2002, Plaintiff went to the store. She was off, but Urista and Morales were working. She confronted them about the theft. Garcia 39:2-20. According to the Plaintiff, Torres reported the incident to the Area Manager, Rolando Gonzalez, and claimed Plaintiff had disrupted the workplace by arguing with Urista and Morales about her missing phone. When Gonzalez tried to speak to Plaintiff about it, Plaintiff resigned, and did not show up for work on the last two (2) days she was scheduled. Her last day of work was July 18, 2002.

## V.
## SUMMARY OF THE ARGUMENT

9.     Plaintiff cannot prove that she was subjected to a hostile environment or that harassment affected a term, condition, or privilege of her employment, and therefore she cannot prove she was harassed on a discriminatory basis.  Further, Plaintiff cannot prove she was constructively discharged, and thus cannot prove she was subjected to an adverse employment action—a key element to her claims of discrimination and retaliation.

10.    Moreover, Plaintiff can not state a claim for national origin discrimination under Section 1981.  She has not exhausted her administrative remedies for her claims of race discrimination under Title VII and TCHRA.  Further, Plaintiff does not plead facts that state a claim of race discrimination generally.  Therefore, Plaintiff's various claims of violation of Title VII, the TCHRA and Section 1981 must fail, and Defendant should be granted summary judgment.

11.    Moreover, Plaintiff cannot establish an essential element of her common law claims.  She cannot show that any duty was owed her, or that any duty has been breached by Defendant, and thus should not prevail on her negligence claims.

12.    Plaintiff's claim for defamation must fail because there was no publication or in the alternative, the alleged communication was privileged. Finally, Texas law holds there is no conspiracy when the actions of which the Plaintiff complains are actions taken between persons in the same company; therefore, the internal workings of the company could not be in conspiracy to deprive Plaintiff of her job.  For these reasons, Defendants are entitled to summary judgment on all Plaintiff's claims.

## VI.
## SUMMARY JUDGMENT EVIDENCE

13.    Defendant relies on excerpts from Plaintiff's Deposition in the attached appendix.

## VII.
## ARGUMENT & AUTHORITIES

### A. Plaintiff has failed to exhaust her administrative remedies on claims of race discrimination under Title VII and TCHRA.

14. "It is well settled that courts are without jurisdiction to consider claims brought under the TCHRA or Title VII as to which an aggrieved party has not first exhausted his administrative remedies by filing a charge of discrimination." *Martin v. The Kroger Co.*, 65 F.Supp.2d 516, 537 (S.D. Tex. 1999). The scope of a civil lawsuit filed under TCHRA or Title VII is limited to the discrimination stated in the charge itself or that which is like or related to allegations in, and growing out of, the investigation of the charge. *Id.* at 537 (citing *National Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 711 (5th Cir. 1994); *Sanchez v. Standard Brands, Inc.* 431 F.2d 455, 466 (5th Cir. 1970)). Thus, failure to assert a claim of discrimination and its lack of development in the course of the investigation preclude that claim being brought in a later suit. *Id.* (citing *National Ass'n of Gov't Employees*, 40 F.2d at 711-12; *Sanchez*, 431 F.2d at 465-66). Plaintiff did not assert race discrimination in her EEOC charge (attached to Plaintiff's Original Petition, Tab 1 of Appendix), even when she apparently later amended it. Further, her Petition, composed with assistance of counsel, references "race," but pleads only facts to support her national origin claim, and thus fails to state a claim for race discrimination. Therefore, Defendants are entitled to summary judgment on this issue.

### B. No cause of action exists for national origin discrimination under Section 1981.

15. Section 1981 does not protect national origin. *St. Francis College v. Al-Kharaji*, 481 U.S. 604, 613 (1987) (requiring Plaintiff on remand to differentiate between race and place or nation of birth in order to support claim under section 1981). Plaintiff cannot state a claim under Section

1981 for national origin discrimination, therefore, Defendants are entitled to summary judgment as a matter of law.

### C. Defendant is entitled to summary judgment on Plaintiff's claims of harassment, discrimination and retaliation under Title VII and the TCHRA.

16. Discrimination and harassment claims based on race, national origin and sex under Title VII and TCHRA are subject to the *McDonald-Douglas* burden-shifting analysis, as are claims arising under Section 1981. *See, e.g., Whitehead v. Chevron,* 2003 U.S. LEXIS 25013 at *10 (N.D. Tex.); Elstner v. Southwestern Bell Telephone Co., 659 F.Supp. 1328, 1345 (S.D. Tex 1987), *aff'd* 863 F.2d 881 (5th Cir. 1988); *Patton v. United Parcel Service,* 910 F.Supp.1250, 1270 (S.D. Tex. 1995). Because Plaintiff cannot prove she suffered an adverse employment action, which is an essential element of her claims, she cannot prevail on allegations of discrimination, or retaliation under either Title VII or the TCHRA. Likewise, because she cannot show that harassment affected a term, condition, or privilege of her employment, she cannot prevail on a claim of discriminatory harassment.

### i. Defendant is entitled to summary judgment on Plaintiff's claims of harassment under Title VII and the TCHRA because she cannot prove that there was a hostile work environment.

17. Plaintiff alleges she was subjected to discrimination in the form of harassment on the basis of her national origin (Mexican), race (Hispanic) and gender (female). To prevail she must prove (1) she is a member of a protected class; (2) she was subjected to harassment; (3) the harassment was based on her protected status; (4) the harassment affected a term, condition, or privilege of her employment; and (5) Defendant knew or should have known about the harassment but failed to take prompt remedial action. *Machado v. Goodman Mfg. Co., L.P.,* 10 F. Supp. 2d 709, 715 (S.D. Tex. 1997); *Azubuike v. Fiesta Mart, Inc.,* 970 S.W.2d 60, 64 (Tex.App.–Houston [14th Dist.]1998, no writ).

18.  To find a hostile work environment mandates a showing of severe or pervasive conduct that is so objectively and subjectively offensive that a reasonable person would find it hostile and abusive. *Faragher v. City of Boca Raton,* 524 U.S. 775, 787 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 724, 754 (1998); *Machado v. Goodman Manufacturing Co.*, 10 F.Supp. 2d 709, 715-16 (S.D. Tex. 1997). Title VII "was only meant to bar conduct that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace." *Machado,* 10 F. Supp. 2d at 716. Mere teasing, offhand comments and isolated incidents (unless extremely serious) will not be actionable unless shown to somehow hinder the employee's performance. *Faragher,* 524 U.S. at 788; *Machado,* 10 F. Supp. 2d at 716. Courts look to the totality of the circumstances, including the frequency of the alleged discriminatory conduct, its severity, whether it is physically threatening or humiliating, and the degree to which it unreasonably interferes with an employee's work performance. *Faragher,* 524 U.S. at 788; *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993); *Machado,* 10 F.Supp. 2d at 716.

19.  All but two of the other employees that worked at the McDonald's with Plaintiff were Hispanic. Garcia 71. Her deposition testimony reveals that an individual's specific nation of origin was not a topic of conversation among employees. Garcia 31:6-22. Further, Plaintiff knew of at least one other Mexican national with whom she worked, but there is no evidence other employees complained of race or national origin discrimination or harassment. Plaintiff acknowledged that Area Manager Gonzalez, who was also Mexican, did not receive mistreatment, which she believed was due to his education and ability to speak English. Garcia 58:22 59:12; 91:21 - 92:8. Thus, Plaintiff admits the environment was not hostile due to race or national origin.

20.  Plaintiff asserts Torres and Morales were romantically involved as the factual support for her sexual harassment claim. *See Plaintiff's Original Petition at 6-7* ("...they assert the basis was Torres [sic] ongoing sexual relationship with at least one of the culprits implicated in the theft.").

Plaintiff pleads this alleged relationship was the reason Torres allegedly restricted Plaintiff from communicating with other employees about the missing cell phone. *Id.* Even if Torres (female) was having an affair with Morales, the overwhelming weight of authority holds that a supervisor's favoritism of a "paramour," without more, cannot support a sexual harassment or gender discrimination claim. *Proskel v. Gattis*, 49 Cal.Rptr.2d 322, 323-24 (Cal. Ct. App. 1996) (citing cases). See *Ellert v. Univ. of Texas at Dallas*, 52 F.3d 543, 546 & n.10 (citing *Candelore v. Clark County Sanitation Dist.*, 752 F.Supp. 956, 960 (D.Nev. 1990) *aff'd*, 975 F.2d 588 (9th Cir. 1992) ("[P]referential treatment of a paramour is not discrimination on the basis of sex in violation of Title VII. . .")). Plaintiff alleges no other instances of sexual harassment or gender discrimination. She does not point to any conduct–such as joking in a sexual nature, unwanted touching, suggestive pictures or comments–that would even remotely suggest a sexually-charged work environment. In her deposition, Plaintiff also accuses Torres of preferential treatment of her "pet" employees, who were female. Garcia 69:3-18. There is no evidence of disparate treatment of Plaintiff based on the Plaintiff's gender.

21. Because there was no hostile environment, Plaintiff's claim of harassment fails and Defendant is entitled to summary judgment. Likewise, Plaintiff cannot prevail on claims of discrimination because she cannot show she suffered an adverse employment action.

> **ii. Defendant is entitled to summary judgment on all claims under Title VII, TCHRA and Section 1981 because Plaintiff suffered no adverse action based on constructive discharge.**

22. Plaintiff was not terminated. She quit, but claims she was constructively discharged. "Constructive discharge requires a greater degree of harassment than that required for a hostile environment claim." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). Plaintiff must

show the working environment was so intolerable that her resignation was an appropriate response. *Pennsylvania State Police v. Suders*, 124 S.Ct. 2342, 2347 (2004); *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000) ("[A]n employee must offer evidence the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign."); *Barrow v. New Orleans Steamship Ass'n*, 10. F.3d 292, 297 (5th Cir. 1994) ("must have been reasonable under all the circumstances"). Just as Plaintiff cannot show harassment affected a term, condition or privilege of her employment, Plaintiff cannot meet the heightened burden for establishing constructive discharge.

23.   Even if Plaintiff could show discrimination, which she cannot, "[d]iscrimination alone, without aggravating factors [such as demotion, pay decrease, transfer, etc.], is insufficient for a claim of constructive discharge." *Id. See also Barrow*, 10 F.3d at 297. Here, no aggravating factors exist. The facts show Plaintiff quit voluntarily after being reprimanded for disrupting the workplace and her coworkers over her stolen cell phone. Where an employee quits due to conflicts with other employees, no constructive discharge occurs. *Mattern*, 104 F.3d at 707 ("Hostility from fellow employees, having tools stolen, and resulting anxiety, without more, do not constitute ultimate employment decisions....").

### iii. Defendant is entitled to summary judgment on Plaintiff's claims of discrimination because there was no adverse employment action.

24.   To make out a prima facie case for discrimination, the Plaintiff must establish she: (1) was discharged or otherwise suffered an adverse employment action; (2) she was qualified for the position; (3) was within the protected class; and (4) was either replaced by a person outside the protected class, or suffered the adverse employment action because of her national origin or race. *Probst v. Ryder Truck Rental, Inc.*, 1999 WL 184127 at *6 (N.D. Tex.) (citing *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 149 (5th Cir. 1995) *cert. denied*, 116 S.Ct. 709 (1996)).

Again, Plaintiff cannot prove she was constructively discharged to meet her burden of showing she suffered an adverse employment action.

25.　"The Fifth Circuit has defined an adverse employment action as an ultimate employment decision that *does not* include disciplinary [actions], supervisor reprimands, or the employee's poor performance that might jeopardize the employee's future employment." *Mongo v. The Home Depot, Inc.*, 2003 WL 22227864 at *2 (N.D. Tex.) (citing *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997) and *Dollis v. Rubin,* 77 F.3d 777, 781-82 (5th Cir. 1995)) (emphasis in original). Adverse employment actions include "hiring, granting leave, discharging, promoting and compensating." *Watts v. Kroger*, 170 F.3d 505, 511-12 (5th Cir. 1999) (citing *Mattern*, 104 F.3d at 708)). "[E]mployment actions are not adverse where pay, benefits, and level of responsibility remain the same." *Mattern*, 104 F.3d at 707. Likewise, actions like changes to one's work schedule or expansion of job tasks do not rise to the level of adverse employment actions. *Watts*, 170 F.3d at 511.

26.　Plaintiff complains of allegedly demeaning comments, cessation of computer training, disproportionate assignment of "menial" tasks, and an alleged *threat* of job loss if she filed a police report regarding the phone theft. *See* Plaintiff's Original Petition. Even if true, none of these constitutes an adverse employment action. At best, these are merely matters, which might have a tangential effect upon an ultimate decision. *Watts*, 170 F.3d at 511 (citing *Mattern*, 104 F.3d at 707) (holding that decisions which may *lead* to an adverse employment action but are tangential to it are not adverse employment decisions)).

27.　Plaintiff avers her resignation was a constructive discharge. While the Fifth Circuit does recognize constructive discharge as an adverse employment action (*see, e.g., Chavera v. Victoria Independent Sch. Dist.*, 221 F.Supp.2d 741, 747 (S.D. Tex. 2002)), as already discussed, Garcia's resignation fails to meet that definition. Constructive discharge requires an objective standard.

Plaintiff's subjective unwillingness to continue to work with what she perceived to be unprofessional behavior by her manager is not sufficient.

### iv. Plaintiff cannot establish an essential element of her discrimination claims.

28. Because Plaintiff cannot prove she suffered an adverse employment action, she cannot set forth a prima facie case. Therefore, Defendant is entitled to summary judgment on these claims.

### D. Defendants are entitled to summary judgment on Plaintiff's retaliation claims.

29. To establish a prima facie case for retaliation, Garcia must show that (1) she engaged in a protected activity; (2) she experienced an adverse employment action following the protected activity; and (3) a causal link existed between the protected activity and the adverse employment action. *Taylor v. Nickels and Dimes, Inc.*, 2002 WL 1827659 at *6 (N.D. Tex.) (citing *Mota v. University of Texas Houston Health Science Ctr*, 261 F.3d 512, 519 (5th Cir. 2001)).

### i. Plaintiff did not engage in protected activity prior to any alleged retaliation.

30. The Plaintiff cannot make out a claim for retaliation because she did not engage in any protected activity until she filed her complaint with the Equal Employment Opportunity Commission, well after she had quit her job. She admits that she did not report the alleged discrimination and harassment to the Area Manager. Garcia 53:8-25. She did not even tell Torres that she found the behavior offensive. Garcia 54:17-23. It was not until after she was reprimanded by Gonzalez that she allegedly reported her feelings of being discriminated against and voluntarily gave her two-week notice of resignation.

31. Plaintiff claims that she was asked to drop the charges against her co-worker or lose her job. Even if true, her act of filing charges for the theft of her telephone is unrelated to her protected status under Title VII, TCHRA or Section 1981 and does not amount to retaliation for engaging in

protected activity under any theory alleged.

### ii. Plaintiff did not suffer any adverse employment action.

32. The *threat* of job loss is not an ultimate employment decision sufficient to constitute an adverse employment action. *See Mattern*, 104 F.3d at 707 (holding that the verbal threats of being fired, reprimands, missed pay increases, and hostility from fellow employees do not constitute adverse employment actions).

### iii. Plaintiff cannot establish two of the essential elements of her retaliation claim on which she will bear the burden at trial.

33. Because Plaintiff cannot prove she engaged in a protected activity prior to any alleged retaliation or that she suffered an adverse employment action, she cannot set forth a prima facie case for retaliation. Therefore, Defendant is entitled to summary judgment..

### E. Defendants are entitled to summary judgment on Plaintiff's state law claims in negligence.

34. The elements of these negligence claims are: (1) the employee was incompetent or unfit for hiring or retention; (2) the employer knew or by the exercise of reasonable care should have known that the employee was incompetent or unfit; (3) it was foreseeable that the incompetent or unfit employee in the course of their employment would come in contact with the plaintiff, thereby creating a risk of harm to the plaintiff; (4) the employer's negligence was the proximate cause of injury to the plaintiff; and (5) the plaintiff was injured. As in negligence claims generally, if no duty is found to exist, there can be no legal liability. *Probst*, 1999 WL 184127 at *8 (citing *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 524-25 (Tex. 1990)).

### i. Plaintiff fails to establish Defendant had a duty; therefore, she has no claim against Defendant in negligence.

35. Plaintiff alleges Defendant was negligent in the following areas: supervision, retention, training and investigation. Whether a duty exists is a question of law. *Probst*, 1999 WL 184127

at *8. As a general rule, foreseeability of the risk of harm is key to determining whether a duty exists. *Id.* (citing *Porter v. Neimer, Jr.*, 900 S.W.2d 376, 385 (Tex. 1995)). The court will look for sufficient evidence indicating the employer knew or should have known plaintiff would be harmed. *Id.* (quoting *Greater Houston Transp. Co.*, 801 S.W.2d at 526).

### ii. Torres was not unfit or incompetent.

36. In this case, Plaintiff admits she told no one about the alleged discrimination and harassment until after she was being reprimanded for improper workplace behavior. Plaintiff's complaint is not evidence of Torres being unfit or incompetent. Further, there was no reason for Defendant to suspect Torres was incompetent or unfit. There is nothing to indicate Defendant could foresee any potential injury to the Plaintiff. There is no harm to Plaintiff who voluntarily quit. Thus, no duty arose to take action against any manager. *See Probst*, 1999 WL 194127 at *8-9. There was no negligence. Defendant should prevail on its motion for summary judgment.

### iii. Texas does not recognize a cause of action for negligent investigation in at-will employment.

37. Moreover, the Texas Supreme Court has declined to recognize a common law cause of action against employers for negligent investigation of its at-will employee's alleged misconduct. *Texas Farm Bureau Mutual Ins. Co. v. Sears*, 84 S.W.3d 604, 610 (Tex. 2002). Therefore, no duty can exist in the investigation of alleged misconduct by Torres.

### iv. Recognizing a cause of action for negligent supervision is inconsistent with the employment-at-will doctrine.

38. Similarly, another Texas court held that an employer does not have a duty to supervise employees to prevent other employees from being terminated wrongfully. *Garcia v. Allen*, 28 S.W.3d 587, 592 (Tex.App.–Corpus Christi 2000, no pet.). Imposing a duty of care in supervision would abrogate the Texas employment at-will doctrine whereby employers are at liberty to

terminate employees for no cause, and even for bad cause, so long as the cause is not against the law.

     **v.**  **Plaintiff cannot establish one or more essential elements of her negligence claims.**

39. Because Plaintiff cannot establish Defendant had a duty of care in relation to Plaintiff's asserted claims, Defendant is entitled to summary judgment on these issues.

  **F.** **Defendant is entitled to summary judgment on claims for intentional infliction of emotional distress because Plaintiff cannot show Defendant's conduct was severe and outrageous.**

40. To support a claim for intentional infliction of emotional distress, Plaintiff must demonstrate that (1) Torres and/or Gonzalez acted intentionally or recklessly; (2) their actions were extreme and outrageous; (3) their actions caused her emotional distress; and (4) such emotional distress was severe. *Fields v. Teamsters Local Union No. 988,* 23 S.W. 3d 517, 530 (Tex. App - Houston [1st Dist.] 2000, pet denied) (citing *Twyman v. Twyman,* 855 S.W. 2d 619 (Tex. 1993)).

41. To be deemed extreme and outrageous, conduct must be "beyond all possible bounds of decency, and regarded as atrocious, and utterly intolerable in a civilized community." *Fields,* 23 S.W.3d at 530. None of Plaintiff's complaints rise to the caliber necessary to prove this essential element of her claim. In the employment context, extreme and outrageous behavior would be that which falls "outside the scope of an ordinary employment dispute." *Fields,* 23. S.W.3d at 531 (citing *GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 613 (Tex. 1999)). Behavior that is rude, distasteful or merely offensive does not meet this standard. *Id.*

42. Moreover, "[s]evere emotional distress is distress that is so severe that no reasonable person could be expected to endure it." *Fields,* 23 S.W.2d at 533 (citing *GTE,* 998 S.W.2d at 618). A claim for intentional infliction of emotional distress does not lie for ordinary employment disputes. *Wal-Mart v. Canchola,* 121 S.W.3d 735, 740 (Tex. 2003). Only "in the most unusual

circumstances" is an employer's conduct so extreme and outrageous that it is removed from the realm of ordinary employment disputes. *Canchola*, 121 S.W.3d at 141 (quoting *GTE Southwest v. Bruce,* 998 S.W.3d 605, 612 (Tex. 1999)).

### i. Plaintiff has no cause of action for intentional infliction of emotional distress.

43. Further, the Texas Supreme Court has held no separate cause of action for intentional infliction of emotional distress exists when the "actor intends to invade some other legally protected interest, even if emotional distress results." *Hoffman-LaRoche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (quoting *Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 67 (Tex. 1998) (internal quotations omitted). In that case, as here, the claim was based on the same conduct as that in the sexual harassment claim. *Zeltwanger,* 144 S.W.3d at 447-49. *See also* Plaintiff's Original Petition at 9. *Johnson*, 985 S.W.2d at 68 ("[T]he tort was a gap-filler tort that should not be extended to circumvent the limitations placed on the recovery of mental aguish damages under more established tort doctrines.").

### G. Defendant is entitled to summary judgment on Plaintiff's state law claims for defamation.

44. In Texas, defamation, may be either libel or slander. *Alaniz v. Hoyt*, 105 S.W.3d 330, 345 (Tex. App.–Corpus Christi 2003, no pet.). In her deposition, Plaintiff specifically mentioned slander as the form of defamation about which she is complaining. Garcia 103:13-22. Slander is a defamatory statement that has been published orally to a third person without legal excuse. *Patton*, 910 F.Supp at 1272.

45. Plaintiff complains that Torres made false accusations to Area Manager Gonzalez about her; this complaint forms the basis of her slander claim. "A statement may be false, abusive, and unpleasant without being defamatory." *Free v. American Home Assurance Co.*, 902 S.W.2d 51, 54 (Tex.App–Houston [1st Dist.] 1995, no writ). Plaintiff's opinion that the statements were

slanderous is not determinative; it is purely a question of law for the court. *Patton*, 910 F.Supp. at 1272.

### i. Defendant's communication was not published to a third party and was protected by a qualified privilege.

46. Moreover, an employer has a qualified privilege which attaches to communications made in the course of an investigation of employee wrongdoing. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). The privilege attaches as long as the information is communicated to individuals with a business interest to know. *Id.* Gonzalez, as the Area Manager and Torres's superior, had a right to know of employee situations that occurring on company property, particularly when the situation is one employee (Garcia) confronting another and making accusations of theft in front of customers.

### ii. Any statements allegedly made to a third party were outside the scope of employment; therefore Defendant would not be liable.

47. Even if the Plaintiff can show that statements were made to third parties, "[t]he general rule is that an employer is liable for its employee's tort only when the tortious act falls in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired." *Minyard Food Stores v. Goodman,* 80 S.W.3d 573, 577 (Tex. 2002). "If the employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation." *Id.* Nothing in the Plaintiff's deposition testimony or Original Petition indicates that any such slanderous remarks were made.

### iii. Plaintiff cannot establish the essential elements of her claim of defamation.

48. Because Defendant had a qualified privilege in its communications about Plaintiff and because Defendant did not publish any defamatory statements about Plaintiff, Defendant is entitled to summary judgment on this issue.

**H. Defendant is entitled to summary judgment on Plaintiff's state law claims for civil conspiracy.**

49. To establish civil conspiracy liability, she must prove: (1) a combination of two or more persons, (2) an unlawful purpose or lawful purpose accomplished by unlawful means; (3) a meeting of the minds on the object of the combination; (4) an unlawful, overt act in furtherance of the conspiracy; and (5) injury as a proximate result of the conspiracy. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). Garcia's theory fails because an entity cannot conspire with itself. *Fisher v. Yates,* 953 S.W.2d 370, 382 (Tex. App.—Texarkana 1997, pet denied).

## VIII.
## CONCLUSION

50. Plaintiff has not alleged and cannot show that all essential elements of her claim can be proven. Defendant seeks a judgment of this court that summary judgment is entered and all claims are dismissed.

Wherefore, Defendant asks the Court to grant the motion and render a summary judgment against Plaintiff on all claims, and for such other and further relief to which Defendant may be entitled.

Respectfully submitted,

By: *[signature]*

**TONYA BEANE WEBBER**
State Bar No.: 21042300
Federal No.: 6145

**PORTER, ROGERS, DAHLMAN & GORDON**
A Professional Corporation
One Shoreline Plaza
800 N. Shoreline, Suite 800
Corpus Christi, Texas 78401-3708
(361) 880-5808/5824 - Office

(361) 880-5844 - Telefax

**ATTORNEY-IN-CHARGE FOR DEFENDANT,
R.E.E., INC., D/B/A MCDONALD'S**

**OF COUNSEL:**
**PORTER, ROGERS, DAHLMAN & GORDON**
A Professional Corporation
One Shoreline Plaza
800 N. Shoreline, Suite 800
Corpus Christi, Texas 78401-3708
(361) 880-5808 - Office
(361) 880-5844 - Telefax

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon the Attorneys of Record of all parties to the above cause in accordance with Rule 34, Federal Rules of Civil Procedure, on the 14th day of January, 2005, as follows:

**VIA CM/RRR ##7002 2030 0000 3642 7095**
David R. Joe
**Brewer, Anthony, Middlebrook, Burley & Dunn, P.C.**
1702 E. Tyler St., Ste. 1
Harlingen, Texas 78550

_____
Tonya Beane Webber

S:\R.E.E., Inc\Garcia, Maria Cruz\PLDG\MSJ_final.wpd