

Not Reported in F.Supp.2d
2003 WL 22075740 (N.D.Tex.)
(Cite as: 2003 WL 22075740 (N.D.Tex.))

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Texas, Dallas Division.

Jose CHAVEZ, Plaintiff,
v.
HYDRIL COMPANY, Defendant.

No. Civ.A. 301CV1494M.

Feb. 18, 2003.

John E. Wall, Jr., Law Office of John E. Wall Jr., Dallas, TX, for Plaintiff.

Eric Senske, Erika Fedge Burkhardt, Baker Botts-Dallas, Dallas, TX, D'Andra Millsap Shu, Kathryn S. Vaughn, Baker Botts, Houston, TX, for Defendant.

*ORDER ACCEPTING FINDINGS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE*

LYNN, J.

*1 On January 14, 2003, United States Magistrate Judge Jeff Kaplan made Findings and a Recommendation. No objections were filed. The Court thus reviews the Findings and Recommendation for plain error. Finding no plain error, the Court accepts the Findings and Recommendation of the United States Magistrate Judge.

IT IS THEREFORE ORDERED that the Findings and Recommendation of the United States Magistrate Judge are accepted.

*FINDINGS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE*

KAPLAN, Magistrate J.

Defendant Hydril Company has filed a motion for summary judgment in this Title VII national origin discrimination case. For the reasons stated herein, the motion should be denied.

I.

Plaintiff Jose Chavez is a Mexican national who emigrated to the United States in 1978. (Plf.App. at 28, 70). Spanish is his primary language. (Def.App. at 87-88). Although plaintiff reads and speaks some English, he is not proficient and prefers communicating in Spanish. (Id. at 38-39, 88).

In September 1988, plaintiff was hired by defendant as a utility operator in the Tubular Division of its Houston, Texas manufacturing facility. (Id. at 1, 8). He was later promoted to utility specialist. (Id. at 7). Among his duties were operating a crane and working in the accessories department. (Id. at 9, 44-45). By all accounts, plaintiff was a good employee. He consistently received above average performance evaluations with high marks for dependability, quality, and efficiency. (Plf.App. at 8-21). At various times, his supervisors commented that plaintiff "learns easily," "achieves normally expected standards of good job performance in all areas," and "always confirms paperwork and asks necessary questions concerning quality." (Id. at 12, 18). However, plaintiff occasionally made mistakes when instructions were given in writing rather than orally. (Def.App. 20-21, ¶ 11; 24, ¶ 9).

Sometime in the early 1990's, defendant decided to seek certification from the International Organization for Standardization ("ISO"). (Id. at 20, ¶ 8; 24, ¶ 6). [FN1] Because of the ISO's emphasis on documentation and quality control, defendant transitioned away from oral instructions in favor of written instructions in the workplace. (Id. at 20, ¶ 9; 24, ¶ 7). Written job descriptions were prepared by the company. (Id. at 20, ¶ 9). As

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exh 3

Not Reported in F.Supp.2d
2003 WL 22075740 (N.D.Tex.)
(Cite as: 2003 WL 22075740 (N.D.Tex.))

of May 1, 1999, utility specialists such as plaintiff were required to "be able to understand verbal and written instructions in English." (*Id.* at 22). Approximately one month after the effective date of this English proficiency policy, plaintiff was laid-off as part of a reduction in force. (*Id.* at 1, ¶ 4; Plf.App. at 23).

> FN1. The International Organization for Standardization promotes uniform, industry-specific standards and certifies companies that meet those standards. ISO certification is a long and difficult process. However, certification is an invaluable marketing tool, as many foreign companies will only conduct business with ISO certified manufacturers. (Def.App. at 20, ¶¶ 6 & 7; 23-24, ¶¶ 4 & 5).

Plaintiff learned that defendant was rehiring laid-off employees in January 2000. (Plf.App. at 23, 56-57). When no one from the company called, plaintiff contacted Guy Feland, the Tubular Plant Manager. (*Id.* at 23). Plaintiff met with Feland and was offered a temporary position. He declined the offer. (*Id.* at 59). Plaintiff met with Feland two more times to ask for permanent employment. On his last visit, plaintiff was handed a book and told to read aloud in English. After listening to plaintiff read for a short time, Feland said, "[O]kay Jose, that's good enough." (*Id.* at 59). Plaintiff never heard from Feland again. He was later told by Steve Magee, Managing Director of Western Hemisphere Operations, that defendant required its employees to read and write English. (*Id.* at 62-63). Magee confirms that plaintiff was turned down for reemployment at the plant level "because of his continued inability to read English proficiently, as demonstrated by his failure of a reading test administered by Guy Feland, Plant Manager." (Def.App. at 21, ¶ 12).

*2 Plaintiff now sues his former employer for national origin discrimination in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et. seq. [FN2] The case is before the court on defendant's motion for summary judgment. The issues have been fully briefed by the parties and the motion is ripe for determination.

> FN2. In his summary judgment response brief, counsel states that "[t]his is a disparate treatment case involving the termination and subsequent failure to re-hire the Plaintiff." (Plf. Resp. Br. at 6). However, plaintiff's complaint does not allege discrimination in connection with his termination. (*See* Plf. Compl. at 2-3, ¶¶ 6 & 7). Nor can plaintiff maintain such a claim under Title VII or any other theory. When plaintiff was laid-off in June 1999, he received $2,610.00 in severance pay and waived all claims arising out of or relating to his separation from the company, including "claims and causes of action under [ ] Title VII of the Civil Rights Act of 1964, as amended ..." (Def.App. at 4).

II.

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 131 (5th Cir.), *cert. denied*, 506 U.S. 845, 113 S.Ct. 136, 121 L.Ed.2d 89 (1992). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matter of Gleasman*, 933 F.2d 1277, 1281 (5th Cir.1991).

A movant who does not have the burden of proof at trial must point to the absence of a genuine fact issue. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir.1995). The burden then shifts to the non-movant to show that summary judgment is not proper. *Duckett v. Cedar Park*, 950 F.2d 272, 276 (5th Cir.1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). All evidence must

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 22075740 (N.D.Tex.)
(Cite as: 2003 WL 22075740 (N.D.Tex.))

Page 3

be viewed in the light most favorable to the party opposing the motion. *Rosado v. Deters,* 5 F.3d 119, 122 (5th Cir.1993); *Reid v. State Farm Mutual Automobile Insurance Co.,* 784 F.2d 577, 578 (5th Cir.1986). However, conclusory statements, hearsay, and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. *Topalian,* 954 F.2d at 1131.

### A.

Both sides object to portions of each other's summary judgment evidence. Much of this evidence is unnecessary to the disposition of the pending motion and will not be considered. However, the court has found it necessary to rely on certain testimony provided by Phillip W. Horton, Steve Magee, and Mike Soptick. Horton testified that, as part of the ISO certification process, emphasis has shifted from oral to written instructions. Employees working in the accessories department must be able to read and understand written work orders. (Def.App. at 9, ¶ 4). Magee provides similar testimony in his affidavit. (*Id.* at 20, ¶ 9). In addition, Magee states that plaintiff often "made mistakes" when written instructions were involved. (*Id.* at 20, ¶ 11). Soptick testified that plaintiff caused "product rejects" while working in the accessories department, where following written work orders is particularly important. (*Id.* at 24, ¶ 9). Finally, Magee explains that he did not rehire plaintiff because:

> *3 I knew he could not read English well, and any position consistent with his qualifications would have required him to read and be able to understand work instructions written in English. I also knew he had already been turned down for reemployment at the plant level because of his continued inability to read English proficiently, as demonstrated by his failure of a reading test administered by Guy Feland, Plant Manager.

(*Id.* at 21, ¶ 12). Plaintiff objects to this testimony on multiple grounds, including hearsay and lack of personal knowledge. (*See* Plf. Resp. Br. at 1-2).

The court initially observes that much of this evidence is contained elsewhere in the record. For example, plaintiff himself admits that he has difficulty reading English. (Def.App.38-39, 88). He also testified at length regarding the reading test administered by Guy Feland and his subsequent conversation with Magee about the English proficiency policy. (Plf. App at 59-61, 62-63). Because they hold supervisory positions with Hydril, Horton and Magee are qualified to testify about the ISO certification process and the importance of understanding and following written work orders. While the court agrees that the testimony regarding unspecified "mistakes" and "product rejects" caused by plaintiff is somewhat vague and conclusory, it is ultimately irrelevant given the recommended disposition of the summary judgment motion. Accordingly, these objections are overruled. [FN3]

> FN3. Defendant also objects to unauthenticated documents contained in plaintiff's summary judgment appendix and certain hearsay statements allegedly made by another Hydril employee, David Brocken, to EEOC investigators. The first objection became moot after the parties stipulated to the authenticity of plaintiff's appendix. The court need not address the second objection as it has not considered any statements made by Brocken in ruling on the summary judgment motion.

### B.

Defendant contends that plaintiff cannot prove that the failure to rehire him because of his inability to read and write English constituted national origin discrimination. In order to prevail on this claim, plaintiff must first establish a *prima facie* case of intentional discrimination. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). This requires plaintiff to show that: (1) he is a member of a protected class; (2) he applied for a position with defendant; (3) he was qualified for the position when he applied; (4) he was not selected for the position; and (5) the position either remained open or was filled by someone outside the protected class. *See Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1087 (5th Cir.1994). [FN4] The burden of establishing a *prima facie* case is not onerous. *Burdine,* 101 S.Ct. at 1094. "[T]o establish a *prima facie* case, a plaintiff need only make a very

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 22075740 (N.D.Tex.)
(Cite as: 2003 WL 22075740 (N.D.Tex.))

Page 4

minimal showing." *Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 41 (5th Cir.1996), *quoting Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir.1985).

> FN4. Plaintiff suggests that defendant's English proficiency policy is discriminatory on its face and constitutes direct evidence of national origin discrimination. (*See* Plf. Resp. Br. at 8 n. 2). The court has scoured the summary judgment record and finds no direct evidence of discrimination. To the extent that plaintiff relies on disparate impact cases requiring the employer to establish a "business necessity" for an English-speaking policy, there is no such burden in a disparate treatment case.

The uncontroverted evidence shows that plaintiff, a Hispanic from Mexico, applied for his former job as a utility specialist but was not rehired. According to defendant, plaintiff was not qualified for the position because he could not understand verbal and written instructions in English. (Def.App. at 21, ¶ 12). Plaintiff worked for defendant for almost 11 years. During that time, he consistently received strong performance evaluations. (Plf.App. at 8-21). There is no mention in any of the evaluations that plaintiff's limited ability to read and understand English affected his work. (*Id.*). Even after defendant adopted an English proficiency policy, plaintiff continued to work as a utility specialist without incident until he was laid-off in June 1999. Six months later, plaintiff reapplied for his job and was offered temporary employment. (Plf.App. at 59). Defendant makes no attempt to controvert this evidence or explain why it is less important for temporary employees to be able to read and understand written instructions in English. This raises a genuine issue of material fact as to whether plaintiff was "qualified" for the position of utility specialist.

*4 Defendant further argues that plaintiff has failed to show that a non-Hispanic was hired to fill the position for which he applied. According to Michael Danford, Director of Human Resources, defendant hired six new employees at its manufacturing facility in January and February 2000. (Def.App. at 1-2, ¶ 6). Four of those employees were Hispanic and none were utility specialists. (*Id.*). However, Steve Magee told plaintiff "if he improved his English, Hydril would consider him as a rehire." (*Id.* at 21, ¶ 12). This suggests that the position remained open, thereby creating a fact issue for trial.

C.

Once plaintiff establishes a *prima facie* case, a presumption of discrimination arises. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *Burdine*, 101 S.Ct. at 1094. The burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment decision. *Hicks*, 113 S.Ct. at 2747; *McDonnell Douglas*, 93 S.Ct. at 1824. This is only a burden of production, not persuasion. If the defendant proffers a legitimate explanation for its employment decision, the plaintiff must prove that the reason given is merely pretextual. *Hicks*, 113 S.Ct. at 2749; *McDonnell Douglas*, 93 S.Ct. at 1825.

In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), a unanimous Supreme Court clarified the standard applicable to the final step of the *McDonnell Douglas* burden-shifting analysis. *Reeves* rejected the notion that a plaintiff must always introduce additional evidence of discrimination, over and above his *prima facie* case, to prove that the employer's proffered explanation is false:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt. Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Thus, a plaintiff's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 22075740 (N.D.Tex.)
(Cite as: 2003 WL 22075740 (N.D.Tex.))

prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

Id., 120 S.Ct. at 2108-09 (citations and punctuation omitted). The Fifth Circuit has since repudiated its "pretext plus" standard-requiring the plaintiff to introduce additional, independent evidence of discrimination at the final step of the burden-shifting analysis--as inconsistent with Reeves. See Ratliff v. City of Gainesville, Texas, 256 F.3d 355, 361-62 & n. 7 (5th Cir.2001), reh'g en banc denied, 273 F.3d 1097 (5th Cir.2001); Blow v. City of San Antonio, Texas, 236 F.3d 293, 297-98 (5th Cir.2001), reh'g en banc denied, 250 F.3d 745 (5th Cir.2001); Evans v. City of Bishop, 238 F.3d 586, 591-92 (5th Cir.2000); Russell v. McKinney Hospital Venture, 235 F.3d 219, 223 (5th Cir.2000). But see Vadie v. Mississippi State University, 218 F.3d 365, 373 n. 23 (5th Cir.2000), reh'g en banc denied, 232 F.3d 212 (5th Cir.2000), cert. denied, 531 U.S. 1113, 121 S.Ct. 859, 148 L.Ed.2d 772 (2001) (commenting that "pretext plus" standard is generally consistent with Reeves ). Thus, where a plaintiff establishes a prima facie case of discrimination, he may survive summary judgment by showing only that the explanation proffered by the defendant for its employment decision is "unworthy of credence." Burdine, 101 S.Ct. at 1095, citing McDonnell Douglas, 93 S.Ct. at 1825-26.

*5 Here, the evidence regarding pretext is sufficient to create a genuine issue of material fact for trial. Defendant argues that plaintiff was not rehired because of his inability to read work orders and follow written instructions given in English. (Def. Br. at 9). However, as previously discussed, there is no objective evidence that plaintiff's limited ability to read and understand English affected his work. Although Mike Soptick, a Quality Control Supervisor, testified that plaintiff caused "product rejects" while working in the accessories department, he fails to mention whether this was due to plaintiff's reading skills. (Def.App. at 24, ¶ 9). Moreover, plaintiff continued to work for defendant after the English proficiency policy was adopted in May 1999. Plaintiff was laid-off a month later as part of a reduction in force, not because of any problems associated with his command of the English language. (Id. at 1, ¶ 4). Finally, despite his limited ability to read English, plaintiff was offered temporary employment when he reapplied for his job in January 2000. (Plf.App. at 59). This evidence, viewed in the light most favorable to plaintiff, is sufficient to create a fact issue regarding pretext. [FN5]

FN5. Defendant cites two cases from other jurisdictions involving plaintiffs who suffered adverse employment consequences because of their inability to effectively communicate in English. See Fragrante v. City and County of Honolulu, 888 F.2d 591 (9th Cir.1989), cert. denied, 494 U.S. 1081, 110 S.Ct. 1811, 108 L.Ed.2d 942 (1990) (Filipino not hired as a clerk because of heavy accent); Shieh v. Lyng, 710 F.Supp. 1024 (E.D.Pa.1989), aff'd, 897 F.2d 523 (3d Cir.1990) (Taiwanese employee demoted from research scientist to chemist because of difficulties in preparing written manuscripts). In both cases, the courts upheld an English proficiency requirement on grounds of business necessity. However, unlike the plaintiff in this case, the plaintiffs in Fragrante and Sheih failed to adduce any evidence that this legitimate business reason was pretextual. See Fragrante, 888 F.2d at 598; Shieh, 710 F.Supp. at 1031-33.

RECOMMENDATION

Plaintiff has presented sufficient evidence to establish a prima facie case of discrimination and create a genuine issue of disputed fact as to whether defendant's explanation for failing to rehire him was false. Accordingly, defendant's motion for summary judgment should be denied.

2003 WL 22075740 (N.D.Tex.)

Motions, Pleadings and Filings (Back to top)
• 3:01CV01494  (Docket)
(Aug. 02, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.