

Not Reported in F.Supp.2d
1999 WL 184127 (N.D.Tex.)
(Cite as: 1999 WL 184127 (N.D.Tex.))

Page 1

C
**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Texas, Dallas
Division.

Mercedes **PROBST**, Plaintiff,

v.

**RYDER TRUCK RENTAL**, INC. and Al Simon,
Individually Defendants.

No. CIV.A.3:97-CV-2521-P.

March 29, 1999.

MEMORANDUM OPINION AND ORDER

SOLIS, District J.

*1 Presently before the Court is Defendants'
Motion for Summary Judgment, filed on August 28,
1998. Plaintiff filed a response on September 17,
1998 and Defendants filed a reply on October 2,
1998. For the reasons stated below, the Court is of
the opinion that Defendants' motion should be
GRANTED.

BACKGROUND

This is an employment discrimination case.
Plaintiff Mercedes Probst ("Plaintiff" or "Probst")
alleges that Defendants Ryder Truck Rental Inc.
("Ryder") and Al Simon ("Simon") discriminated
against her by terminating her employment on July
31, 1996. Specifically, Plaintiff alleges national
origin and gender discrimination under Title VII, as
well as state law causes of action.

Plaintiff began working for Ryder in the mid
1980's. Pl.'s Resp. at 1. In 1994, Plaintiff transferred
from her job at Ryder in Michigan to the Dallas
Regional Office where she worked as an

administrative assistant to the Senior Regional
Human Resources Manager, Bruce Carter. Defs.'
Mot. at 4. In addition, Plaintiff provided
administrative support to Ryder's Used Truck
Department. [FN1]

> FN1. According to Defendants, Plaintiff's
> responsibilities in the Human Resources
> Department consumed approximately
> ninety to ninety-five percent of her time.
> Defs.' Mot. at 4-5.

In March 1995, Defendant Simon replaced Bruce
Carter as the Senior Regional Human Resources
("HR") Manager. [FN2] Plaintiff continued to
perform the same support functions for Simon that
she had previous performed under Bruce Carter.
[FN3] According to Plaintiff, however, the volume
of her work decreased due to the way Simon
performed his responsibilities. Probst Dep. at 32-33.

> FN2. Before assuming this position,
> Simon had spent approximately three years
> as the HR Manager of Ryder's Consumer
> Truck Rental Group at the Miami, Florida
> headquarters. Prior to working for Ryder,
> Simon began his HR career with the
> Wackenhut Corporation in Florida, where
> he was employed from December 1982 to
> May 1992. While at Wackenhut, he held
> the positions of Director, Corporate
> Recruitment; Manager EEO-AAP; and
> various other positions. Simon Aff. ¶ 4-5,
> Ex .1. Some of his responsibilities
> included: recruitment, employee relations,
> HR "start-up," discriminatory charge
> investigation, corrective action and
> defense, as well as all AAP audit work. Id.
> In addition, throughout Simon's career, he
> has attended internal and external
> workshops and seminars for labor and
> employee relations issues. Defs.' Mot. at 5;
> Simon Aff. ¶ 4.

> FN3. Plaintiff's primary HR functions
> involved answering telephone questions

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exh.5

from field personnel and generally supporting the field. Probst Dep. at 35-36. In addition, because Simon's job required him to travel frequently, Plaintiff also had to be available for personnel in case they needed to locate Simon. Simon Aff. ¶¶ 17, 26.

Around this same time period, Larry Armbruster became Manager of Ryder's Used Truck Department. *Id.* Armbruster generated a higher volume of work than his predecessor. So, as Plaintiff's HR responsibilities diminished, Plaintiff began receiving more responsibilities in this department.

By December 1995, Plaintiff's HR responsibilities required no more than forty (40) to fifty (50) percent of her time and Plaintiff was doing even more work for Armbruster. Probst Dep. at 36-37; Defs.' Mot. at 6. According to Plaintiff, during either December 1995 or January 1996, Plaintiff wrote a memorandum to Simon and Armbruster over her job responsibilities for the Used Truck Department. In her letter, Plaintiff indicated that she felt frustrated because she believed there was a "lack of direction" in supporting both managers. Plaintiff believed that both managers were "lacking management skills." Probst Dep. 120-21.

Plaintiff, however, did not receive the response she wanted from her letter. After receiving the memo, Plaintiff noticed that Armbruster started distributing responsibilities to other employees and did not channel work to her. Probst Dep. at 124-25. Plaintiff believed that Armbruster appeared to be insulted and offended by her memo. *Id.* Plaintiff informed Simon of this situation. *Id.*

In June of 1996, Simon completed Plaintiff's Performance Appraisal for the period of April 1995 through April 1996. [FN4] Ryder's policy required annual evaluations. According to Defendants, although appraisals were not always completed by their due date, all appraisals evaluated a specific time period only and were retroactive for purposes of pay raises. Simon Aff. ¶ 9. Thus, Defendants assert that although Plaintiff did not receive her April 1995 through April 1996 Performance Appraisal when she expected to receive such appraisal, she suffered no monetary loss because

her pay raise was effective retroactively. [FN5] Defs.' Mot. at 7; Probst Dep. at 138-39.

> FN4. Part of Simon's responsibilities included conducting written appraisals of Plaintiff's job performance. Simon Aff. ¶ 9.

> FN5. Plaintiff asserts that she was adversely effected by not timely receiving her Performance Appraisal. Pl.'s' Resp. at 3.

*2 On or about June 24, 1996, Plaintiff received her Performance Appraisal for the period of April 19, 1995 through April 18, 1996. In the past, Plaintiff's reviews were generally above average, and her evaluation this period was consistent with her prior reviews. Defs.' Mot. at 8. Although Plaintiff took no offense to her overall rating, and she received a four (4) percent pay increase, Plaintiff disagreed with her rating under the category "Support of Multiple Managers." [FN6] Probst Dep. at 138-139; Simon Aff. ¶ 11, Ex. 2.

> FN6. Plaintiff felt it was unfair that this section was weighed at twenty (20) percent of her overall score. *See* Probst Dep. at 41, 122-123.

According to Simon, under this section he commented that Plaintiff had failed to satisfy administrative requirements to the satisfaction of Armbruster and the prior Used Truck Department manager. In his evaluation, Simon referred to Plaintiff's deficiencies in this area as "an apparent developmental area" for Plaintiff. Simon Aff. ¶¶ 11-13, Ex. 2 In addition, Simon indicated, under the heading "General Comments/Development Needs," that "[m]oving forward, it will become imperative for [Plaintiff] to demonstrate that she can satisfactorily support more than one manager." *Id.*

Because Plaintiff disagreed with some of Simon's comments on her annual review, Plaintiff filled out the "Employee comments" section of her evaluation. Simon Aff. ¶ 10, Ex. 2. Plaintiff responded to her total evaluation, however, she specifically indicated that the "lack of clear direction, goals and objectives--sometimes creates an atmosphere of uncertainty." Simon Dep., Ex.2 Plaintiff also indicated that she felt as though some

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 184127 (N.D.Tex.)
(Cite as: 1999 WL 184127 (N.D.Tex.))

Page 3

of the statements in her appraisal were untrue. Finally, Plaintiff addressed the untimeliness of her appraisal. In this section she indicated that it seemed as though her appraisal was hastily put together and presented, and this sent a message to her that "the Boss doesn't care." *Id.* She also indicted that "[a]ny Manager that cannot timely appraise one employee certainly needs training or direction." [FN7] *Id.*

> FN7. Plaintiff believes that her interaction with Simon changed after she gave him her written responses to his appraisal. Probst Dep. at 82. In addition, Plaintiff alleges that contrary to company policy, Simon never spoke with her about her appraisal.

After reading Plaintiff's responses, Simon believed he should bring this to the attention of his supervisor, Bill Ihrig, Ryder's Director of Field Human Resources. Defs.' Mot. at 9; Simon Aff. ¶ 15. On July 1, 1996, Simon forwarded a copy of the Appraisal, Plaintiff's response, and a memorandum to his supervisor. *Id.* Ex. 3. A copy of Simon's memo was placed in Plaintiff's personnel file. *Id.*

On or about July 10, 1996, while Simon was out of town, Plaintiff entered Simon's office, unlocked his desk and searched for her personnel file. Plaintiff alleges that she wanted her file in order to create a resume. When Plaintiff did not locate her file in Simon's desk, she unlocked his credenza. In one of the drawers, Plaintiff found her personnel file which she removed and took back to her desk. Defs.' Mot. at 9; Probst Dep. at 67-68.

Plaintiff maintains that Defendants never informed her to use the keys to Simon's desk and credenza for business purposes only, nor was she ever given any restrictions on the use of her keys. Pl.'s Resp. at 3. On the other hand, Defendants allege that in order to access Simon's desk and credenza, Plaintiff used keys that Simon had entrusted to her for business purposes only. Defs.' Mot. at 9. Simon alleges that he did not give Plaintiff a set of keys so that she could invade the privacy of his office for personal reasons. *See* Simon Aff. ¶¶ 16, 23; Defs.' Mot. at 10. Simon states that he had locks put on his desk and credenza because his office door had no lock. *Id.* Simon further alleges that no other employee had keys to his desk and credenza. *Id.*

*3 According to Defendants, in Ryder's Regional Office, all personnel files were locked up in the HR Department and only a few people, about four or five, had keys to access this information. [FN8] *Id.* at 14; Defs.' Mot. at 10. Defendants maintain, and Plaintiff admits, that it is important for Ryder to maintain the privacy of personnel files. [FN9] *Id.;* Probst Dep. at 51-52. Defendants assert that despite knowing Ryder's policy, Plaintiff accessed her personnel file by unlocking Simon's credenza.

> FN8. Plaintiff asserts that during her employment, all personnel files in Ryder's Regional Office were not kept under lock and key in the HR Department. Pl.'s Resp. at 4.

> FN9. Defendants assert that it was their policy, as set forth in the Ryder's Personnel Manual, Section 1.11, to require that employees who wish to review their own personnel files submit a written request to their immediate supervisor. Cooksey Aff. ¶ 8, Ex. 3. In addition, such review must take place in the presence of a personnel representative or the most senior management representative at the employees location. Defs.' Mot. at 10. Defendants maintain that it is contrary to company policy for any employee—management or otherwise—to review his or her own personnel file without following procedure. Cooksey Aff. ¶ 9. In response, Plaintiff maintains that Defendants did not enforce this policy. Pl.'s Resp. at 3.

In her personnel file, Plaintiff found Simon's July 1, 1996 memorandum to his supervisor. Plaintiff believed that this memorandum was a result of the comments she had submitted in her response to her Performance Appraisal. Therefore, on July 11, 1996, Plaintiff wrote a letter to Simon regarding his memorandum, and forwarded a copy to Simon's supervisor. Defs.' Mot. at 11. In the letter, Plaintiff requested that Simon's supervisor get involved to discuss these issues. Pl.'s Resp. at 4; Simon Aff., Ex. 4.

Defendants allege that when Simon received Plaintiff's letter, he realized that she had gone into

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 184127 (N.D.Tex.)
(Cite as: 1999 WL 184127 (N.D.Tex.))

Page 4

his credenza without proper authorization. *Id.;* Simon Aff. ¶ 18. Simon asserts that Plaintiff did this without a business purpose, but solely for personal reasons. [FN10]

> FN10. Plaintiff alleges that she had authority to access her file from Simon's office and did not "intrude" upon Simon's privacy by accessing her personnel file. Pl.'s Resp. at 3. Plaintiff also asserts that in October of 1995 she had gone into Simon's office and unlocked his desk and credenza. According to Plaintiff, if Simon was truly upset or felt that there was "broken trust," then he should have reprimanded her at that time or taken away her set of keys. Pl.'s Resp. at 2.

Plaintiff and Defendants did not speak about Plaintiff's July 11, 1996 letter. Instead, Simon simply told Plaintiff that he had received her letter and would respond. Simon alleges that this incident destroyed his confidence in Plaintiff. Consequently, after consultation with his supervisor, Simon decided to terminated her. Simon Aff. ¶ 21.

On July, 31, 1996, Plaintiff met with Simon. During this meeting he presented Plaintiff with a memorandum in response to her letter of July 11, 1996. In addition, Simon presented her with a Termination Letter explaining the reasons for his decision. Specifically, Simon stated that he was terminating Plaintiff because he did not trust her. Defs.' Mot. at 12. Contrary to this assertion, Plaintiff maintains that she was terminated because Simon disliked the comments she made in response to her Performance Appraisal. Probst Dep. at 46.

After Plaintiff's termination, Simon issued two memorandums to Ryder's field employees, a total of ten (10) employees. The first, dated July 31, 1996, stated that Plaintiff was no longer with Ryder. In addition it stated, "[p]lease join [Simon] in wishing [Plaintiff] well in her future employment opportunities. Simon Aff., Ex. 7. The second letter, dated August 1, 1996, did not mention Plaintiff. Instead, this letter informed Simon's field employees who his new administrative assistant was and provided some background information on her. Simon Aff., Ex. 8. Defendants maintain that neither memorandum mentioned that Plaintiff had been

terminated. [FN11]

> FN11. Defendants assert that both memoranda were necessary because Simon spends so much time traveling his field employees needed to know who to contact in order to reach him. In addition, Defendants assert that after Plaintiff's termination, the position of administrative assistant to the HR Manager no longer existed. Certain limited duties were assigned to another female support person.

In November 1996, Probst filed a charge with the Equal Opportunity Commission ("EEOC") alleging Defendants had discriminated against her by terminating her employment. On July 16, 1997, Plaintiff received the EEOC's right to sue letter. On October 14, 1997, Plaintiff brought this action against Defendants alleging national origin and gender discrimination under Title VII of the Civil Rights Act of 1964, as amended, and state law causes of action for breach of contract; negligent hiring and negligent supervision; and tortuous interference.

### DISCUSSION
I. *PLAINTIFF'S AND DEFENDANTS' OBJECTIONS*

**\*4** As a preliminary matter, the Court must consider both Plaintiff's and Defendants' objections to portions of the summary judgment evidence. The Court examines Plaintiff's objections first. Plaintiff alleges that the Court should strike Defendants' entire Motion for Summary Judgment because Defendants have failed to comply with the Court's Local Rules. Although the Court admonishes Defendants for not complying with the Local Rules, in the interest of judicial economy, the Court DENIES Plaintiff's request.

Next, the Court considers Defendants' objections to Plaintiff's summary judgment evidence. Specifically, Defendants ask the Court to strike portions of Plaintiff's evidence because it consists of conclusory allegations and opinions without factual support. Because the Court has found it unnecessary to rely upon several portions of the challenged evidence, it need not consider Defendants' objections. Instead, insofar as it may be necessary,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 184127 (N.D.Tex.)
(Cite as: 1999 WL 184127 (N.D.Tex.))

Page 5

this Order will address specific objections to those portions of the disputed evidence that the Court regards as relevant to the resolution of the particular summary judgment issues. [FN12] The remaining portions of Defendants' motion is DENIED as MOOT.

> FN12. The Court's rulings on specific objections will be addressed *infra*.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must identify the evidence on file in the case which establishes the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323.

Once the moving party has made an initial showing, the party opposing the motion must offer evidence sufficient to establish the existence of essential elements of the party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment; the party defending against a motion for summary judgment cannot defeat the motion unless it provides specific facts that show the case presents a genuine issue of material fact, such that a jury might return a verdict in its favor. *Anderson*, 477 U.S. at 256-57. Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgement are likewise insufficient to defeat a proper motion for summary judgment. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

All evidence and the inferences to be drawn therefrom "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold*, 369 U.S. 654, 655 (1962); *Marshall v. Victoria Transp. Co.*, 603 F.2d 1122, 1123 (5th Cir.1979). However, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III. PLAINTIFF'S TITLE VII CLAIMS

*5 Claims of employment discrimination brought under Title VII of the Civil Rights Act of 1964 are analyzed under the framework set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) and, more recently *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). Under the *McDonnell Douglas/St. Mary's* scheme, a plaintiff must first establish a prima facie case of discrimination. *St. Mary's*, 509 U.S. at 506. Such a prima facie case is established if the plaintiff provides evidence that he/she: (1) was discharged; (2) was qualified for the position; (3) was within the protected class; and (4) was either replaced by a person outside the protected class, or otherwise discharged because of her national origin and/or gender. *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 n. 2 (5th Cir.1996); *Armendariz v.. Pinkerton Tobacco Co.*, 58 F.3d 144, 149 (5th Cir.1995), *cert. denied*, 116 S.Ct. 709 (1996); *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955 (5th Cir.1993).

Once the plaintiff has successfully established a prima facie case, he/she has raised a rebuttable presumption of discrimination and shifted the burden to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *St. Mary's*, 509 U.S. at 506. If the employer satisfies this burden of production, the plaintiff must then present evidence that the reason proffered by the defendant is actually a pretext for discrimination and that the defendant's employment decision was in fact informed by discriminatory motives. *Id.* at 507. Thus, the defendant's successful rebuttal of the presumption created by the prima facie case requires the plaintiff to present more specific evidentiary support for his or her allegation of discriminatory intent. *See Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir.1996). A plaintiff can avoid summary judgment "if the evidence taken as a whole (1) creates a fact

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 184127 (N.D.Tex.)
(Cite as: 1999 WL 184127 (N.D.Tex.))

Page 6

issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that gender and/or national origin was a determinative factor in the actions of which plaintiff complains. *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir.1996) (en banc) (emphasis added). The ultimate burden of persuasion at trial, of course, rests squarely on the plaintiff. *St. Mary's,* 509 U.S. at 508; *Stults,* 76 F.3d at 657; *Marcantel v. Louisiana Dep't of Transp. & Dev.,* 37 F.3d 197, 200 (5th Cir.1994).

### A. Plaintiff's Title VII Claims Against Defendant Simon

Title VII prohibits discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). Section 2000e(b) defines "employer" as "a person engaged in an industry or commerce who has fifteen or more employees ... and any agent [FN13] of such a person." The term "person" includes one or more individuals. 42 U.S.C. § 2000e(a). Title VII does not allow the imposition of liability upon individuals, even those functioning in a management capacity, unless such individual meets the definition of "employer" under Title VII. *Grant v. Lone Star Co,* 21 F.3d 649, 652-53 (5th Cir.), *cert denied,* 513 U.S. 1015 (1994) . Plaintiff has submitted no evidence to establish that Simon qualifies as her "employer" so that he may be held individually liable for her gender and/or national origin discrimination claims under Title VII. " 'Among the various parties subject to liability in [Title VII], Congress could have made the individual employee committing or engaging in the discriminatory acts liable for damages. It did not." ' *Colbert v. Georgia-Pacific Corporation,* 995 F.Supp. 697, 701 (N.D.Tex.1998) (quoting *Grant,* 21 F.3d at 653); *see J.R. Valle v. Johnson Controls World Services, et al,* 957 F.Supp. 1404, 1413 (S.D.Miss.1996) (finding that a manager or supervisor can never be individually liable under Title VII to pay damages for actions taken in his supervisory capacity.) Therefore, the Court concludes that summary judgment is GRANTED as to Defendant Simon in his individual capacity. [FN14]

FN13. The purpose behind Congress including an entity's agents within the

definition of "employer" was to incorporate respondeat superior liability to include individuals who do not otherwise qualify as employers under the statute. *See Davidson v. Service Corporation International,* 943 F.Supp. 734, 736 (S.D.Tex.1996)

FN14. Furthermore, the Court notes that even if Defendant Simon could be found amenable to suit because he was her direct supervisor and had the authority to fire her, as discussed in Subsection B and C, Plaintiff's Title VII claims fail as a matter of law. *See Pfau v. Reed,* 125 F.3d 927, 937 (5th Cir.1997); *Garcia v. ELF Atochem North America,* 28 F.3d 446, 450-51 (5th Cir.1994).

### B. Plaintiff's National Origin Claim Against Defendant Ryder

*6 In order to defeat Defendants' Motion for Summary Judgment, Plaintiff must first establish her prima facie case of national origin discrimination. To establish a prima facie case, Plaintiff must satisfy all four elements. First, Plaintiff must have suffered an adverse employment decision. It is undisputed that Plaintiff was discharged. Second, Plaintiff had to be qualified for the position. Although Defendants did not give Plaintiff a stellar evaluation, it is undisputed that Plaintiff was qualified for her position. Third, Plaintiff has to fall within the protected class. Plaintiff is Cuban.

As to the fourth element however, the Court finds that Plaintiff has failed to come forward with any evidence that might lead a fact finds to conclude that national origin was in any way a factor for her termination. It is well established that only a "very minimal showing" is required for Plaintiff to satisfy the requirement of a prima facie discrimination case. *See Nichols v. Loral Vought System Corp.,* 81 F.3d 38, 41 (5th Cir.1996) (quoting *Thornbrough,* 760 F.2d at 639). Here, there is no evidence before the Court that establishes Plaintiff was terminated because of her national origin. [FN15]

FN15. In her affidavit, Plaintiff states that "[i]t is common knowledge in the Cuban

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 184127 (N.D.Tex.)
(Cite as: 1999 WL 184127 (N.D.Tex.))

culture that Cuban males do not consider females, especially Cuban females, to be of equal as males." Probst Aff. ¶ 29. This statement, however, is not enough to establish that Defendants discriminated against her based on her national origin. The mere fact that a plaintiff believes her employer discriminated against her is insufficient to prove discrimination. *Nichols,* 81 F.3d at 42 (finding that an employee's own subjective belief of discrimination, no matter how genuine, cannot serve as a basis of judicial relief). There is no evidence before the Court establishing or even suggesting that Defendant Simon even had this belief.

## C. Plaintiff's Gender Discrimination Claim Against Defendant Ryder

To establish a prima facie case of gender discrimination, Plaintiff must also satisfy all four elements above. As stated *supra,* Plaintiff did suffer an adverse employment decision; she was qualified for her job; and she is within the protected class, she is female. As to the last element, however, the Court finds that Plaintiff has failed to come forward with any evidence to show that her gender was in any way a factor for her termination. [FN16]

> FN16. After Defendants terminated her employment, Defendant Simon had another female assist him with his duties. *See* Simon Aff, Ex. 8.

However, even assuming that Plaintiff did meet her prima facie case, the Court finds Plaintiff's claim would still fail to establish gender discrimination. Defendants maintain that the decision to terminate Plaintiff's employment was based primarily upon Defendant Simon's lack of trust and confidence in Plaintiff because she invaded the privacy of his locked desk and credenza. Defs.' Mot at 12. Based on the evidence submitted, the Court finds that Defendant Ryder has articulated a legitimate, non-discriminatory reason for terminating Plaintiff's position with the company.

As stated *supra,* under the *McDonnell Douglas/St. Mary's* framework, the burden now shifts to Plaintiff to demonstrate that Defendant Ryder's

proffered reason is actually a pretext for unlawful discrimination. To do so, Plaintiff must come forward with substantial evidence that gender was a determinative factor in Ryder's decision to end her employment. *Rhodes,* 75 F.3d at 994. Plaintiff alleges the summary judgment evidence illustrates that Ryder's decision to terminate Plaintiff on July 31, 1996 is unworthy of credence. Plaintiff asserts the following arguments to support her position.

Plaintiff alleges that sometime during October 1995 she had gone into Simon's office and accessed her personnel file from Simon's locked credenza with no negative reaction from Defendant Simon. Therefore, Plaintiff alleges that Simon's reaction in July of 1996 was inconsistent with his reaction in October 1995, and thus shows that his reason for terminating her employment is false. *Id.* In addition, Plaintiff asserts that she did not receive her performance appraisal on time because she was a woman, and that Plaintiff's prior male supervisors had no problems with her work or conduct. Pl.'s Resp. at 7.

*7 The Court finds Plaintiff's evidence does not demonstrate that Defendant Ryder had a pretext for its actions when it terminated Plaintiff. In fact, the Court does not understand how Defendants' actions could possibly be interpreted as a pretext. First, the fact that Simon did not reprimand her for entering his office in October 1995 but did reprimand her for entering his office in July 1996 does not show discriminatory intent. All it shows is that Simon decided he did not want Plaintiff going through his locked desk or credenza.

As to Plaintiff's second argument, Plaintiff asserts that she did not receive her Performance Appraisal on time because she was a woman. The Court finds that there is absolutely no summary judgment evidence to suggest Plaintiff's belief. In fact, the Court finds the evidence shows that Plaintiff believed Defendant Simon probably fired her because he did not take her written response to his performance appraisal positively. [FN17] Probst Dep. at 46. Furthermore, in order to prove a fact question as to discrimination, a plaintiff must provide sufficiently specific reasons for his or her opinions; mere subjective speculation will not suffice. *Nichols,* 81 F.3d at 42; *see Armendariz v. Pinkerton Tobacco Co .,* 58 F.3d 144, 152 (5th

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 184127 (N.D.Tex.)
(Cite as: 1999 WL 184127 (N.D.Tex.))

Cir.1995) (finding that once an employer articulates a nondiscriminatory reason, an employee's subjective belief of discrimination does not create a fact issue as to pretext).

> FN17. The fact that an employee and an employer disagree about a performance evaluation is not a sufficient basis for a reasonable jury to infer that the employer's legitimate, nondiscretionary explanation is false. *See Molnar v. Ebasco Constructors,* 986 F.2d 115, 119 (5th Cir.1993) (finding that personal animosity over a negative evaluation does not translate into discrimination.)

Plaintiff has failed to produce either substantial evidence of pretext from which a jury could infer discriminatory intent or other evidence that would create a reasonable inference that unlawful discrimination motivated her employer's decisions. *See Walton v. Bisco Industries,* 119 F.3d 368, 373 (5th Cir.1997). Because Plaintiff has failed to present any evidence to demonstrate that Defendant Ryder's reasons are actually pretexts for gender discrimination, the Court GRANTS summary judgment as to this claim.

### IV. STATE LAW CLAIMS

#### A. Breach of Agreement

In Plaintiff's Complaint, Plaintiff asserts that she was at all times "ready, willing, and able to perform her duties and obligations" under her employment contract and that Defendant Ryder breached its agreement with Plaintiff by terminating her employment. Pl.'s Compl. ¶¶ 11-13. Specifically, Plaintiff relies upon the terms and conditions stated in Ryder's Employee Handbook. In response to this claim, Defendant Ryder asserts that Plaintiff had no employment contract with Ryder. Defs.' Mot. at 13.

The general rule in Texas is that absent a specific agreement to the contrary, employment may be terminated, by the employer or employee at will, for good cause, bad cause, or no cause at all. *Montgomery County Hosp. Dist. v. Brown,* 965 S.W.2d 501, 502 (Tex.1998); *Federal Express Corporation v. Dutschmann,* 846 S.W.2d 282, 283 (Tex.1993). Texas law also clearly states that

personnel manuals or handbooks do not create contractual rights. *Brown v. City of Galveston, Texas,* 870 F.Supp. 155, 158 (S.D.Tex.1994). "An employee manual 'standing alone, may not expressly or impliedly limit an employer's ability to terminate an employee at will.' " *Brown,* 870 F.Supp. at 158 (quoting *Glagola v. North Texas Municipal Water District,* 705 F.Supp. 1220, 1223 (E.D.Tex.1989). In order for an employment manual to alter the at-will relationship, it must " 'specifically and expressly limit the relationship and curtail the employer's right to terminate the employee." ' *Id.* (quoting *Almazan v. United Services Automobile Assoc., Inc.,* 840 S.W.2d 776, 780 (Tex.App.—San Antonio 1992, no writ); *see Zimmerman v. H.E. Butt Grocery Co.,* 932 F.2d 469, 471 (5th Cir.1991) (finding that absent an agreement between parties that procedures in the handbook are binding, employee handbook is only a guideline which creates no contractual rights). Moreover, a disclaimer in an employee manual or handbook "negates any implication that a personnel procedures manual places a restriction on the employment at will relationship." *Federal Express,* 848 S.W.2d at 283.

*8 In the present case, it is undisputed that Plaintiff relies upon Ryder's policies and/or manuals to establish that she had an employment contract. Probst Dep. at 140. It is also undisputed that Ryder's Employee Handbook contained a disclaimer stating that the policies and procedures stated herein "are not intended to be an employment contract or agreement, nor do they contain promises or commitments to the employee of any kind." Defs.' Mot. at 14. Finally, it is undisputed that Plaintiff signed an acknowledgment, when she began her employment, indicating that she understood that the Employee Handbook was not a contract. Probst Dep. at 141-42, Ex. 2. Based on the evidence before the Court, the Court concludes as a matter of law, no contract existed restricting the employment at will relationship between Ryder and Probst. Summary Judgment is GRANTED on this claim.

#### B. Negligent Hiring and Negligent Retention Claims

In order to establish a cause of action for negligence, a plaintiff must establish the existence of a duty, a breach of that duty, and damages which

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 184127 (N.D.Tex.)
(Cite as: 1999 WL 184127 (N.D.Tex.))

were proximately caused by that breach. *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995). If no duty exists, there is no legal liability. *Greater Houston Transp. Co., v. Phillips,* 801 S.W.2d 523, 524-25 (Tex.1990). Whether a duty exists is a question of law for the court to decide. *Porter v. Neimer, Jr.,* 900 S.W.2d 376, 385 (Tex.1995).

Generally, no duty exists to protect someone from the conduct of a third person. *Id.* This general rule, however, does not "apply when a special relationship exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct. [This] include[s] the relationships between an employer and employee... " *Greater Houston Transp. Co,* 801 S.W.2d at 525. Plaintiff's claims of negligent hiring and negligent retention fall within this exception. *See Porter,* 900 S.W.2d at 385; *Doe v. Boys Clubs of Greater Dallas, Inc.,* 868 S.W.2d 942, 950 (Tex.App.--Amarillo 1994, writ granted) (claim for negligent hiring/retention requires harm to be a result of employment).

In determining whether a defendant was under a duty, a court can consider several interrelated factors, "including the risk, forseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. Of these, forseeability of the risks is the dominant consideration." *Porter,* 900 S.W.2d at 385 . Before liability will be imposed, "there must be sufficient evidence indicating that the defendant knew or should have known that harm would eventually befall a victim. Absent such a showing, a defendant is absolved if liability." *Id.* (quoting *Greater Houston Transportation Co.,* 801 S.W.2d at 526.) Therefore, the mere fact that an employee or agent caused injury affords no presumption that the employer was negligent. *See Greater Houston Transp. Co.,* 801 S.W.2d at 526. Instead, the plaintiff must show that his or her harm is a proximate result of either the faulty hiring or continued employment of the incompetent employee. *Dieter v. Baker Serv. Tools,* 739 S.W.2d 405, 408 (Tex.App.--Corpus Christi 1987, writ denied).

*9 In the present case, Plaintiff alleges that Defendant Ryder should be held liable because of Defendant Simon's failure to follow Ryder's Performance Appraisal and Open Door Policies. Plaintiff asserts these actions or inactions made Simon an incompetent supervisor and caused Plaintiff harm. Further, Plaintiff alleges, because Ryder knew or should have known of Simon's incompetence it should have taken appropriate action to protect Plaintiff. Pl.'s Compl. at 3-5; Pl.'s Resp. at 8.

The key inquiry is whether the employer knew or should have known that the employee was incompetent or unfit. *See Porter,* 900 S.W.2d at 385 . Here, the Court finds that for both causes of action Plaintiff fails to meet her burden. The Court finds that there is no evidence that establishes Ryder should have considered Simon unfit for employment. The evidence shows that prior to becoming Manager of HR in Dallas, Simon had successfully worked at different Ryder location in Florida. In addition, Simon had several years experience at another company in Florida before even joining Ryder. Simon never received any complaints in any of these positions. Nor is there any evidence before the Court of Simon receiving any other complaints or discipline for failing to perform his managerial or supervisory responsibilities in his present position which would have put Ryder on notice. [FN18] Defs.' Mot. at 5; Simon Aff. ¶ 4. Therefore, the Court GRANTS Defendants summary judgment on these claims.

> FN18. In addition, the Court finds that Plaintiff has failed to show what harm she encountered by receiving a late Performance Appraisal. The evidence illustrates that monetary raises were retroactive.

C. Tortuous Interference Claim

Texas law recognizes that a party to a contract has a cause of action for tortuous interference against a third party, (meaning a "stranger" to the contract) who wrongfully interferes with that contract. *Holloway v. Skinner,* 898 S.W.2d 793, 794 (Tex.1995) In order to prevail on a tortuous interference cause of action, a plaintiff must prove: (1) a contract subject to interference existed; (2) a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

were proximately caused by that breach. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex.1995). If no duty exists, there is no legal liability. *Greater Houston Transp. Co., v. Phillips*, 801 S.W.2d 523, 524-25 (Tex.1990). Whether a duty exists is a question of law for the court to decide. *Porter v. Neimer, Jr.*, 900 S.W.2d 376, 385 (Tex.1995).

Generally, no duty exists to protect someone from the conduct of a third person. *Id.* This general rule, however, does not "apply when a special relationship exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct. [This] include[s] the relationships between an employer and employee... " *Greater Houston Transp. Co*, 801 S.W.2d at 525. Plaintiff's claims of negligent hiring and negligent retention fall within this exception. *See Porter*, 900 S.W.2d at 385; *Doe v. Boys Clubs of Greater Dallas, Inc.*, 868 S.W.2d 942, 950 (Tex.App.--Amarillo 1994, writ granted) (claim for negligent hiring/retention requires harm to be a result of employment).

In determining whether a defendant was under a duty, a court can consider several interrelated factors, "including the risk, forseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. Of these, forseeability of the risks is the dominant consideration." *Porter*, 900 S.W.2d at 385 . Before liability will be imposed, "there must be sufficient evidence indicating that the defendant knew or should have known that harm would eventually befall a victim. Absent such a showing, a defendant is absolved if liability." *Id.* (quoting *Greater Houston Transportation Co.*, 801 S.W.2d at 526). Therefore, the mere fact that an employee or agent caused injury affords no presumption that the employer was negligent. *See Greater Houston Transp. Co.*, 801 S.W.2d at 526. Instead, the plaintiff must show that his or her harm is a proximate result of either the faulty hiring or continued employment of the incompetent employee. *Dieter v. Baker Serv. Tools*, 739 S.W.2d 405, 408 (Tex.App.--Corpus Christi 1987, writ denied).

*9 In the present case, Plaintiff alleges that Defendant Ryder should be held liable because of Defendant Simon's failure to follow Ryder's Performance Appraisal and Open Door Policies. Plaintiff asserts these actions or inactions made Simon an incompetent supervisor and caused Plaintiff harm. Further, Plaintiff alleges, because Ryder knew or should have known of Simon's incompetence it should have taken appropriate action to protect Plaintiff. Pl.'s Compl. at 3-5; Pl.'s Resp. at 8.

The key inquiry is whether the employer knew or should have known that the employee was incompetent or unfit. *See Porter*, 900 S.W.2d at 385 . Here, the Court finds that for both causes of action Plaintiff fails to meet her burden. The Court finds that there is no evidence that establishes Ryder should have considered Simon unfit for employment. The evidence shows that prior to becoming Manager of HR in Dallas, Simon had successfully worked at different Ryder location in Florida. In addition, Simon had several years experience at another company in Florida before even joining Ryder. Simon never received any complaints in any of these positions. Nor is there any evidence before the Court of Simon receiving any other complaints or discipline for failing to perform his managerial or supervisory responsibilities in his present position which would have put Ryder on notice. [FN18] Defs.' Mot. at 5; Simon Aff. ¶ 4. Therefore, the Court GRANTS Defendants summary judgment on these claims.

> FN18. In addition, the Court finds that Plaintiff has failed to show what harm she encountered by receiving a late Performance Appraisal. The evidence illustrates that monetary raises were retroactive.

C. Tortuous Interference Claim

Texas law recognizes that a party to a contract has a cause of action for tortuous interference against a third party, (meaning a "stranger" to the contract) who wrongfully interferes with that contract. *Holloway v. Skinner*, 898 S.W.2d 793, 794 (Tex.1995) In order to prevail on a tortuous interference cause of action, a plaintiff must prove: (1) a contract subject to interference existed; (2) a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 184127 (N.D.Tex.)
(Cite as: 1999 WL 184127 (N.D.Tex.))

So ordered.

1999 WL 184127 (N.D.Tex.)

    **Motions, Pleadings and Filings (Back to top)**
- 3:97CV02521  (Docket)
                (Oct. 14, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.