

49 Cal.Rptr.2d 322                                                                                                Page 1
41 Cal.App.4th 1626, 49 Cal.Rptr.2d 322, 69 Fair Empl.Prac.Cas. (BNA) 1433, 67 Empl. Prac. Dec. P 43,982, 96
Cal. Daily Op. Serv. 607, 96 Daily Journal D.A.R. 905
(Cite as: 41 Cal.App.4th 1626, 49 Cal.Rptr.2d 322)

C

Court of Appeal, Fourth District, Division 1,
California.

Karen A. PROKSEL, Plaintiff and Appellant,
v.
Richard E. GATTIS, et al., Defendants and
Respondents.

No. D020619.

Jan. 26, 1996.
Certified for Partial Publication [FN1].

FN1. Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, III and IV.

Former employee brought action against her former employer for breach of contract, breach of implied covenant of good faith and fair dealing, fraud and deceit, sex discrimination and wrongful discharge in violation of public policy. The Superior Court of San Diego County, No. 655533, Patricia Yim Cowett and Robert J. O'Neill, JJ., entered judgment for employer, and employee appealed. The Court of Appeal, Benke, Acting P.J., held that evidence of romantic relationship between employee's supervisor and her co-worker was insufficient by itself to establish claim of sexual discrimination or sexual harassment under Fair Employment and Housing Act or public policy of state.

Affirmed.

West Headnotes
[1] Civil Rights ☞1168
78k1168 Most Cited Cases
(Formerly 78k158.1)
[1] Civil Rights ☞1190
78k1190 Most Cited Cases
(Formerly 78k167)
Former employee failed to establish sexual discrimination and harassment claims based on evidence of romantic relationship between supervisor and another employee, where there was no evidence of conduct other than favoritism toward that employee. West's Ann.Cal.Gov.Code § 12900.
[2] Civil Rights ☞1185
78k1185 Most Cited Cases
(Formerly 78k167)
Flattering remarks about former employee's coworker, his favoritism toward her, and kiss that she blew at him was not sufficiently pervasive conduct by supervisor to create hostile work environment.
[3] Civil Rights ☞1166
78k1166 Most Cited Cases
(Formerly 78k158.1)
[3] Civil Rights ☞1188
78k1188 Most Cited Cases
(Formerly 78k167)
Romantic relationship between supervisor and employee does not, without more, give rise to sexual discrimination or sexual harassment claim either under Fair Employment and Housing Act or public policy of state. West's Ann.Cal.Gov.Code § 12900.
**322*1627 Judy G. Keim, Escondido, for Plaintiff and Appellant.

Richard E. Gattis, in pro per, and H. Paul Kondrick, San Diego, for Defendants and Respondents.

BENKE, Acting Presiding Justice.

Among other contentions, in this case plaintiff and appellant Karen A. Proksel asks us to recognize a species of employment discrimination based solely on an employer's or supervisor's preferential treatment of a fellow employee with whom the employer or supervisor is romantically involved. We decline to do so.

As we explain in greater detail, although office romances may create a host of problems for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXL

49 Cal.Rptr.2d 322  Page 2
41 Cal.App.4th 1626, 49 Cal.Rptr.2d 322, 69 Fair Empl.Prac.Cas. (BNA) 1433, 67 Empl. Prac. Dec. P 43,982, 96 Cal. Daily Op. Serv. 607, 96 Daily Journal D.A.R. 905
(Cite as: 41 Cal.App.4th 1626, 49 Cal.Rptr.2d 322)

employers and in particular cases may be relevant evidence in considering a larger claim of sexual harassment, by itself preferential treatment of paramours is not actionable by other employees.

*1628 FACTUAL BACKGROUND

Proksel began working for defendant and respondent Richard E. Gattis on May 23, 1989. Gattis is an attorney and Proksel worked as his personal secretary and office manager. Proksel worked from four to six **323 hours a day for Gattis and devoted the remainder of her working hours to a freelance paralegal business.

At the time Proksel started working for Gattis, Gattis employed Sherry Burton as a full time word processor. Burton had been employed by Gattis since 1985 and was his only full time clerical employee.

According to Proksel, in October 1990 she began noticing events which led her to believe Gattis was romantically interested in Burton. Proksel observed Gattis looking down Burton's low cut blouse and following Burton's movements as she left the premises. At the office Christmas party Gattis told Burton she was beautiful. In addition Burton received a larger year end bonus than any other employee, more valuable Christmas gifts and went with Gattis on a private birthday lunch. Proksel also noticed Gattis and Burton seemed to be having clandestine meetings in and out of the office.

In January 1991 Gattis separated from his wife and moved out of his family's home. At the time of the separation, Gattis's wife told Proksel that she suspected Gattis was having an affair with Burton. Gattis responded to these statements by telling Proksel that his wife blew everything out of proportion when it came to Burton.

On August 14, 1991, Proksel arrived at work early and saw Burton blowing kisses at Gattis. Gattis and Burton evidently noticed Proksel and quickly left the area. Proksel was shocked by what she saw and reported it in a telephone conversation with Gattis's wife.

Two days later, on August 16, 1991, Gattis terminated Proksel's employment. Burton took over Proksel's duties and was given a pay raise.

PROCEDURAL HISTORY

Proksel filed a complaint against Gattis [FN2] which was amended twice. The second amended complaint alleged causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud and *1629 deceit, sex discrimination and wrongful discharge in violation of public policy.

> FN2. In addition to Gattis, Proksel named Richard E. Gattis, a Professional Law Corporation, as a defendant. Unless otherwise indicated all references to Gattis in this opinion include Richard E. Gattis, a Professional Law Corporation.

By way of an order granting summary adjudication, Proksel's sex discrimination and public policy causes of action were dismissed. Following Proksel's opening statement, Gattis's motion for nonsuit was granted as to Proksel's fraud and deceit cause of action. The trial court also dismissed as redundant Proksel's claim that Gattis acted in bad faith. However Proksel was allowed to pursue her claim for breach of an implied promise that she would not be terminated except for good cause.

The jury found Proksel was an at-will employee. Based on that finding the trial court entered judgment in favor of Gattis.

Proksel filed a timely notice of appeal.

DISCUSSION
I [FN*]

FN* See footnote 1, ante.

II

[1] Proksel contends that the trial court erred in granting summary adjudication as to her statutory and common law claims of sexual discrimination and sexual harassment. Those claims were based on the Fair Employment & Housing Act (FEHA) (

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 Cal.Rptr.2d 322 Page 3
41 Cal.App.4th 1626, 49 Cal.Rptr.2d 322, 69 Fair Empl.Prac.Cas. (BNA) 1433, 67 Empl. Prac. Dec. P 43,982, 96
Cal. Daily Op. Serv. 607, 96 Daily Journal D.A.R. 905
(Cite as: 41 Cal.App.4th 1626, 49 Cal.Rptr.2d 322)

Gov.Code, § 12900) and the public policy of the state. (See *Rojo v. Kliger* (1990) 52 Cal.3d 65, 88, 276 Cal.Rptr. 130, 801 P.2d 373.) We find no error.

[2] Significantly, other than the favoritism she believes Gattis demonstrated toward Burton, Proksel does not point to any other act of sexual discrimination or harassment. She does not contend that Gattis led Burton or any other employee to believe that they could obtain favorable treatment from him if they became romantically involved with him. (See *Toscano v. Nimmo* (D.Del.1983) 570 F.Supp. 1197, 1200.) She has not presented any facts which show that the manner in which the affair between Gattis and Burton was conducted was so indiscreet as to create **\*324** a hostile work environment. (See *Drinkwater v. Union Carbide Corp.* (3d Cir.1990) 904 F.2d 853, 862; *Broderick v. Ruder* (D.D.C.1988) 685 F.Supp. 1269, 1277.) Moreover she has not presented evidence of other pervasive conduct by Gattis which *\*1630* created a hostile work environment. (See *Fisher v. San Pedro Peninsula Hosp.* (1989) 214 Cal.App.3d 590, 610-612, 262 Cal.Rptr. 842.) [FN5] We take pains to set forth these well recognized theories of recovery because evidence of a romantic relationship between a supervisor and a subordinate might well be relevant in establishing liability on one of these theories and our holding in this case should not be interpreted as precluding admission of such evidence to prove these theories. (See *Drinkwater v. Union Carbide Corp., supra,* 904 F.2d at p. 861.)

> FN5. In order to establish that a hostile working environment existed "courts have held that acts of harassment cannot be occasional, isolated, sporadic, or trivial, rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature." (*Fisher v. San Pedro Peninsula Hosp., supra,* 214 Cal.App.3d at p. 610, 262 Cal.Rptr. 842.) Gattis' flattering remarks about Burton, his favoritism toward her, and the kiss she blew at him do not meet this standard.

Where, as here, there is no conduct other than favoritism toward a paramour, the overwhelming weight of authority holds that no claim of sexual harassment or discrimination exists. (*Drinkwater v. Union Carbide Corp., supra,* 904 F.2d at p. 862; *Ellert v. University of Texas* (5th Cir.1995) 52 F.3d 543, 546; *DeCintio v. Westchester County Medical Center* (2d Cir.1986) 807 F.2d 304, 306-307; *Erickson v. Marsh & McLennan Co., Inc.* (1990) 117 N.J. 539, 558, 569 A.2d 793; *O'Patka v. Menasha Corp.* (E.D.Wis.1995) 878 F.Supp. 1202, 1206; *Ayers v. American Tel. & Tel. Co.,* (S.D.Fla.1993) 826 F.Supp. 443, 445; *Piech v. Arthur Andersen & Co.* (N.D.Ill.1994) 841 F.Supp. 825, 829; *Candelore v. Clark County Sanitation Dist.* (D.Nev.1990) 752 F.Supp. 956, 960, aff'd, 975 F.2d 588 (9th Cir.1992).) As the federal Equal Employment Opportunity Commission (EEOC) has stated: "Not all types of sexual favoritism violate Title VII. It is the Commission's position that Title VII does not prohibit isolated instances of preferential treatment based upon *consensual romantic relationships.* An isolated instance of favoritism toward a 'paramour' (or a spouse, or a friend) may be unfair, but it does not discriminate against women or men in violation of Title VII, since both are disadvantaged for reasons other than their genders." (EEOC Notice No. 915-048 (Jan. 12, 1990), fn. omitted, emphasis added.)

The principal contrary authority is *King v. Palmer* (D.C.Cir.1985) 778 F.2d 878, 880, which assumed without deciding, that a romantic relationship between a supervisor and a subordinate was sufficient to make out a prima facie case of sexual discrimination. Because *King v. Palmer* did not directly reach the merits of the paramour theory and because its statement about the issue has been almost unanimously rejected, it is not persuasive.

[3] Rather we agree with the weight of authority that it would be both impracticable and unwarranted for the courts to assume a generalized police *\*1631* power over intimate consensual relationships between co-employees. (See *DeCintio v. Westchester County Medical, supra,* 807 F.2d at p. 308.) Accordingly we hold that a romantic relationship between a supervisor and an employee does not, without more, give rise to a sexual discrimination or sexual harassment claim either under the FEHA or the public policy of the state. Because Proksel has shown nothing more than such

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 Cal.Rptr.2d 322 Page 4
41 Cal.App.4th 1626, 49 Cal.Rptr.2d 322, 69 Fair Empl.Prac.Cas. (BNA) 1433, 67 Empl. Prac. Dec. P 43,982, 96 Cal. Daily Op. Serv. 607, 96 Daily Journal D.A.R. 905
(Cite as: 41 Cal.App.4th 1626, 49 Cal.Rptr.2d 322)

a relationship, her sexual discrimination and harassment claims were properly dismissed.

### III & IV [FN**]

FN** See footnote 1, *ante*.

### DISPOSITION

Judgment affirmed. Respondent to recover his costs of appeal.

HALLER and McDONALD, JJ., concur.

41 Cal.App.4th 1626, 49 Cal.Rptr.2d 322, 69 Fair Empl.Prac.Cas. (BNA) 1433, 67 Empl. Prac. Dec. P 43,982, 96 Cal. Daily Op. Serv. 607, 96 Daily Journal D.A.R. 905

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.