

Not Reported in F.Supp.2d
2000 WL 276813 (N.D.Tex.)
(Cite as: 2000 WL 276813 (N.D.Tex.))

Page 1

Only the Westlaw citation is currently available.

United States District Court, N.D. Texas, Dallas Division.

Sylvia TARLEY, Plaintiff,
v.
CRAWFORD-THG, INC., formerly Thomas Howell Group (Americas), Inc., and Gay & Taylor, Inc. Defendants.

No. Civ.A.3:97-CV-2197-P.

March 10, 2000.

MEMORANDUM OPINION AND ORDER

SOLIS, J.

*1 Presently before the Court is the Motion for Summary Judgment of defendant Crawford-THG, Inc., with supporting brief and appendix, filed August 18, 1999, and plaintiff Sylvia Tarley's Response to the summary judgment motion, with supporting brief and appendix, filed September 23, 1999. Defendant's Objections to Plaintiff's Evidence Offered in Summary Judgment, filed October 26, 1999, is MOOT, because the Court need not rely upon the challenged evidence in rendering its decision.

For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED.

DISCUSSION

Plaintiff Sylvia Tarley, a woman of African descent, alleges that her former employer, defendant Crawford-THG, Inc. ("Crawford"), discriminated and retaliated against her in violation of Title VII and 42 U.S.C. § 1981. Tarley's discrimination claims arise from Crawford's alleged failure to promote her on the basis of her national origin and race, as well as Crawford's assignment to Tarley of a disproportionately low salary. Tarley also claims that her salary and subsequent pay raise were less than those received by others in the same position, in retaliation for her filing a complaint with the EEOC.

Each of Crawford's four grounds for summary judgment are addressed below.

I. WHETHER CRAWFORD-THG WAS TARLEY'S EMPLOYER

Tarley alleges that Crawford merged with co-defendant Gay & Taylor [FN1] in late 1992. (Compl. at ¶ 12). Crawford, however, argues that it was a separate corporation from Gay & Taylor up until December 1995, and accordingly seeks dismissal of certain of Tarley's claims to the extent they pre-date December 1995. [FN2] (Def. Br. at 5).

　　FN1. Tarley has settled her claims against Gay & Taylor.

　　FN2. Although Tarley's complaint refers to Thomas Howell (Americas) Inc., the name of Crawford-THG's predecessor, the Court continues to refer to the entity in question as Crawford.

Crawford offers an affidavit stating that it and Gay & Taylor "were separate and distinct corporations, with separate employees, and separate lines of business." (Def.App. at 140, ¶ 4). The record reflects, however, that during the relevant period both entities were subsidiaries of the Swiss Reinsurance Corporation, a European parent. (*Id.* at ¶ 4). Given this information, and in light of Tarley's repeated assertions that certain of her Gay & Taylor supervisors were working as agents for Crawford before December 1995 (Pl. Br. at 3), the Court cannot agree with Defendant that no issue of material fact exists as to this subject such that they are entitled to summary judgment. Summary judgment on this ground is DENIED.

II. WHETHER TARLEY'S CLAIMS ARE

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exh. 7

Not Reported in F.Supp.2d
2000 WL 276813 (N.D.Tex.)
(Cite as: 2000 WL 276813 (N.D.Tex.))

Page 2

**TIME-BARRED**

**A. *Claims Pertaining to Failure to Hire/Promote Beginning in 1992***

Tarley alludes to numerous incidents, sometimes specifically and sometimes generally, whereby she allegedly was the victim of race and national-origin discrimination as early as August 1992. (*See, e.g.,* Def.App. at 11, 44; Compl. at ¶¶ 13-14). Although not altogether clear from Tarley's pleadings, she appears to allege that between 1992 and 1995, there were several instances where Crawford refused to hire or promote her to certain positions.

\*2 It is uncontested, however, that Tarley waited until September 12, 1995 to file her first EEOC complaint, and until September 8, 1997 to file her lawsuit. Focusing on the latter date, Crawford asserts that the applicable statute of limitations bars Tarley from asserting her Section 1981 claims for actions occurring before September 8, 1995, [FN3] and bars any Title VII claims for actions occurring before November 16, 1994. *Gonzalez v. Firestone Tire and Rubber Co.,* 610 F.2d 241, 250 (5th Cir.1980) (two-year statute of limitations for Section 1981 claims); *Messer v. Meno,* 130 F.3d 130, 134 (5th Cir.), *cert. denied,* 119 S.Ct. 794 (1999) (three-hundred day statute of limitations for Title VII claims).

> FN3. Tarley admits that she "cannot recover on any claim of race discrimination or retaliation based on 42 U.S.C. § 1981 which which occurred prior to September 8, 1995." (Pl. Br. at 8).

While otherwise untimely claims could, at least in theory, be saved pursuant to the "continuing violation" doctrine, the Court observes that failure to promote cannot constitute a continuing violation under prevailing precedent. *See Huckaby v. Moore,* 142 F.3d 233, 240 (5th Cir.1998). Therefore, as a general matter, the Court finds that any Section 1981 claims by Tarley predating September 8, 1995, and any Title VII claims arising before November 16, 1994, are indeed time-barred. Accordingly, Crawford's motion for summary judgment is GRANTED on Tarley's claim that she was denied promotion to Adjuster Trainee between 1992 and November 16, 1994 (for the Title VII claims) or September 8, 1995 (for the Section 1981 claims). *Id.*

**B. *The July 1, 1995 Failure-to-Promote Claim***

Moving from the general to the specific, Crawford next questions why Tarley waited over two years from July 1, 1995, when she was allegedly denied a promotion, to file her lawsuit. (Def. Br. at 6). Crawford contends that a two-year limitations period applies, and that Tarley's discrimination claims relating to the July 1 failure to promote are time-barred. (Pl. Br. at 6).

While admitting that she cannot recover on her Section 1981 claims for occurrences before September 8, 1995 (*see* Pl. Br. at 8), Tarley responds that the failure-to-promote claim is in fact based only upon Title VII, not Section 1983. (Pl. Br. at 3). Accordingly, Tarley asserts that she timely filed an EEOC complaint in September 1995, and filed this lawsuit within ninety days of the EEOC's granting the right to sue. (Pl. Br. at 3; *see also* Pl.App. at 281-84).

As discussed above, Tarley's Title VII claims are not time-barred to the extent they occurred after November 16, 1994. *See Messer v. Meno,* 130 F.3d at 134. Therefore, as Tarley alleges that the failure to promote occurred on July 1, 1995, this Title VII allegation is not untimely. Crawford's motion for summary judgment as to this claim is DENIED.

**III. TARLEY'S BURDEN FOR THE DISCRIMINATION CLAIMS**

For Tarley to prevail on her Title VII and Section 1981 discrimination claims, she must first prove a *prima facie* case of discrimination. *Wallace v. Texas Tech. Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996). Assuming this threshold is met, Crawford would need to articulate an legitimate, nondiscriminatory reason for the employment decision. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 508-09 (1993). The burden then would shift back to Tarley to prove that Crawford "intentionally discriminated" against her on the basis of a prohibited factor and that the proffered reason was a pretext for discrimination. *Id.* at 515-17.

\*3 Essentially, Tarley claims that she was

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2000 WL 276813 (N.D.Tex.)
(Cite as: 2000 WL 276813 (N.D.Tex.))

Page 3

discriminated against as a result of six decisions or incidents: (A) she was not hired by Crawford as an Adjuster Trainee beginning on July 1, 1995; (B) when she finally was hired by Crawford as Adjuster Trainee, her $24,000 salary was discriminatory; (C) she was being given more complex work assignments than Adjuster Trainees normally receive; (D) the five-percent raise she received upon her April 1996 promotion was discriminatory; (E) she was not given a performance evaluation in October or November 1996, and (F) in December 1996, she was put on thirty-day probation. (See Compl. ¶¶ 13-24; Def.App. at 60-63).

Crawford argues that summary judgment should be granted on each of these claims because Tarley can neither establish a *prima facie* case of discrimination, nor demonstrate that Crawford's proffered reasons were pretextual. Each of the six claims are addressed below.

A. *Failure to Hire as Adjuster Trainee*

Crawford admits that Tarley initially was not hired as an Adjuster Trainee in July 1995 because the supervisor conducting the interview "found Tarley difficult to understand," specifically due to Tarley's accent. (Def. Br. at 10). Crawford contends that the decision not to hire Tarley was nondiscriminatory, because excellent communication skills were a prerequisite for the position. (*Id* ). The Court has little doubt that an individual's poor communication skills, regardless of whether they are due to an accent or otherwise, is a legitimate concern to employers when making employment decisions. *See, e.g., Fragante v. City of Honolulu*, 888 F.2d 591, 596 (9th Cir.1989) (affirming summary judgment, observing that "there is nothing improper about an employer making an honest assessment of the oral communication skills of a candidate for a job when such skills are reasonably related to job performance"). On its face, then, this could be a rational business decision beyond the reach of the anti-discrimination laws. *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372 (5th Cir.1997) (discrimination laws are not vehicles for judicial second-guessing of business decisions).

The concern, of course, is whether such decision concerning an employee's accent is merely a pretext intended to shroud unlawful employment discrimination. Here, besides her own subjective belief that this was the case, Tarley fails to present the Court with any evidence of Crawford's pretext or discrimination on the basis her race or national origin. [FN4] Although she submitted voluminous evidence that former employers and other individuals were able to understand her accent (*see* Pl.App. 115, 118, 163, 170-72, 179), Crawford's hiring supervisor testifies that she had difficulty. As noted above, employers properly may refuse to hire or promote an heavily-accented employee who hails from *any* part of the world, including native-born citizens; so long as the discrimination does not underpin the decision, Courts will not interfere with an employer's selection of an employee it believes is unable to communicate effectively.

> FN4. Tarley also cites *Amro v. Boeing Co.*, 153 F.3d 726, n. 4 (10th Cir.1998) for the proposition that Crawford's very reference to her accent "can be as a matter of law indirect evidence of national origin discrimination." The Court finds this citation unhelpful for two reasons. First, the Tenth Circuit citation merely reflects that court's affirmance (without published opinion) of the Kansas district court opinion, which itself is published at 951 F.Supp. 1533 (D.Kan.1997). And second, the district court opinion simply cannot fairly be read to support Tarley's proposition; in fact the *Amro* plaintiff's speaking accent, while mentioned by the defendant as a minor employment problem, was ultimately modified to the employer's satisfaction. *Id.*, 951 F.Supp. at 1539.

*4 Without some additional evidence by Tarley that her race or national origin were in fact motivating factors in this incident, the claim is untenable. Accordingly, summary judgment is GRANTED as to this claim.

B. *Discriminatory Salary as Adjuster Trainee*

Finally, sometime before October 1, 1995, Tarley was promoted to Adjuster Trainee at a salary of $24,000 per year. Tarley now contends that her salary was discriminatory, because it was less than the amount paid to other, mostly Caucasian, who

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2000 WL 276813 (N.D.Tex.)
(Cite as: 2000 WL 276813 (N.D.Tex.))

Page 4

were promoted to Adjuster Trainee at the same time. (Compl.¶¶ 19-20).

To establish a *prima facie* case of compensation discrimination, Tarley must show that she (i) is a member of a protected class, and (ii) is paid less than a nonmember for work requiring substantially the same responsibility. *Cochrane v. Houston Light & Power Co.*, 996 F.Supp. 657, 666 (S.D.Tex.1998), citing *Uviedo v. Steve's Sash and Door Co.*, 738 F.2d 1425, 1431 (5th Cir.1984). Because Crawford assumes for purposes of summary judgment that Tarley has made a *prima facie* case (Def. Br. at 13), the Court considers whether Crawford's proffered reasons for the salary differential are legitimate and nondiscriminatory or merely pretextual.

Crawford offers uncontested evidence that of the twenty-one individuals hired as Adjuster Trainees between June 30, 1995 and July 1996:(A) three individuals (all Caucasian) were hired at a lower salary than Tarley's; (B) Tarley and eight others (all Caucasian) were hired at the same salary; (C) eight individuals (one African-American and seven Caucasians) were hired at salaries ranging from $26,000 to $27,000; and (D) one person was hired at a significantly higher salary than Tarley ($36,000), due to her extensive paralegal experience. (Def. Br. at 11-12; Def.App. 126).

Tarley, however, argues that Crawford's proffered comparable pool - which spans hiring of Adjuster Trainees over a one-year period - is too large, as the pay scale reportedly changed after July 1995. (Pl. Br. at 9). Instead, Tarley would focus the analysis upon only those individuals hired in July 1995 (when Tarley received her salary offer), each of whom were hired at either the same or greater salary than Tarley. The Court accepts this suggestion. Now, focusing on these ten other hires, we analyze Tarley's general argument that her education, training and experience made her more comparable to the higher-paid Adjuster Trainees. (Pl. Br. at 10).

Of the ten people hired as Adjuster Trainees at the same time as Tarley, three individuals were hired at Tarley's $24,000 salary: Katherine Culver, Bobby Morgan and Jill Pham. (*See* Pl.App. 285). According to Tarley, only two of these three individuals earned degrees (one Bachelor of Arts and one Bachelor of Science), and none of them had any experience in claims adjusting. While Tarley argues that her salary was too low as a result of discriminatory employment practices, the Court is unconvinced. Tarley simply has not demonstrated that she was so much more qualified than these three individuals, that she deserved more than $24,000 or that they deserved less than $24,000.

*5 With that in mind, the Court now turns to those six individuals - Dana Bratton, Theresa Pecchi, Michael Nute, Patty Keyser, Leon Nadalski and Cindy Morgan [FN5] - hired as Adjuster Trainees in July 1995 at salaries superior to Tarley. Proffering what it characterizes as legitimate, nondiscriminatory reasons, Crawford argues that it was justified in paying Tarley less than these six individuals because they each had more valuable and/or relevant experience than did Tarley. (Def. Br. at 11-12). To that end, Shelly Glasgow, who interviewed candidates for the Adjuster Trainee position, testified that she believed a Business Administration degree "was generally more valuable to someone performing the claims adjusting position than a Bachelor of Arts degree." (Def.App. 146, ¶ 18; Def.App. 155, 159). It is uncontested that Tarley had a Bachelor of Arts, rather than a Business Administration, degree.

> FN5. All but Michael Nute, who is African-American, are Caucasian.

Dana Bratton and Theresa Pecchi were hired at starting salaries of $26,000. [FN6] Crawford explains that each of these women had a Business Administration degree as well as some relevant underwriting experience. (Def.App.145-46, ¶¶ 16-17).

> FN6. Again, Tarley was hired at a salary of $24,000.

Michael Nute also began as an Adjuster Trainee at a salary of $26,000. Nute, an African-American, had a Business Administration degree. (Def.App. 145, ¶ 15; Def.App. 156).

Patty Keyser was paid $27,000 when hired as Adjuster Trainee. According to Crawford, Keyser's Business Administration degree and six years experience in the insurance industry as a claims adjuster were significant assets to the company.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2000 WL 276813 (N.D.Tex.)
(Cite as: 2000 WL 276813 (N.D.Tex.))

Page 5

(Def.App. 145, ¶ 13; Def.App. 154).

Leon Nadalski started as Adjuster Trainee at $27,000. In addition to having earned an Business Administration degree, Nadalski served for three years in the United States military. (Def.App.157). Glasgow testified that the military experience "was a significant asset given that the contract he was hired to service involved the United States Navy and the United States Marines." (Def.App.145, ¶ 14).

Cindy Morgan began as an Adjuster Trainee at a salary of $36,000. Morgan had several years experience as a paralegal, which Crawford believed was of benefit to the project. (Def.App. 145, ¶ 12; Def.App. 158).

Tarley takes issue with Crawford's assertion that a Business Administration degree, or paralegal or military experience, were advantageous credentials for an Adjuster Trainee. (Pl.App.22-23, ¶¶ 99-101). However, it bears repeating that the discrimination statutes are not vehicles for judicial second-guessing of business decisions. *Walton,* 119 F.3d at 372. Indeed, the Fifth Circuit recently pronounced that, "we do not try in court the validity of [an employer's] good faith belief as to [one] employee's competence [in comparison to another]." *Deines v. Texas Dept. of Protective and Regulatory Srvs.,* 164 F.3d 277, 281 (5th Cir.1999), *quoting Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1091 (5th Cir.1995) (citations omitted). Further, it is not a discriminatory practice to treat differently-situated people differently. *Walton,* 119 F.3d at 373.

*6 After reviewing all of the evidence relating to the qualifications of the six individuals paid more than Tarley, the Court concludes that Tarley has failed to demonstrate that Crawford's proffered reasons for the salary grades are pretextual. Not only do Tarley's claims lack evidentiary corroboration or support, but Crawford's business reasons for the relatively minor salary disparities appear wholly reasonable.

Thus, summary judgment is GRANTED with respect to Tarley's Adjuster Trainee salary discrimination claims.

### C. *Increased Workload*

Tarley also charges that while serving as an Adjuster Trainee in late 1995, she was assigned the difficult task of processing lost-time claims, despite the fact that Adjuster Trainees were not supposed to handle such complex matters. (Def.App.62, 87). To establish a *prima facie* case for this claim, Tarley must show that (i) she is a member of a protected class, (ii) she was qualified for her position, (iii) she suffered an adverse employment action, and (iv) others similarly situated were treated more favorably. *Urbano v. Continental Airlines, Inc.,* 138 F.3d 204, 206 (5th Cir.), *cert. denied,* 119 S.Ct. 509 (1998).

After reviewing the evidence, the Court finds that Tarley cannot demonstrate that she suffered an adverse employment action. Such an action must constitute an "ultimate employment decision[ ], not ... every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Dollis v. Rubin,* 77 F.3d 777, 781-82 (5th Cir.1995). Here, it seems obvious that the assignment of complex work, even if other Adjuster Trainees were not given the same tasks, [FN7] simply cannot qualify as an ultimate employment decision. What's more, Tarley herself testified that she did not complain about these assignments (Def.App.88); that her supervisor provided her with extra support in order to get through her heavy workload (Def.App.116); and that after January 1996, she did not require extra assistance because her workload was under control (Def.App.117). Without more, the discrimination laws do not afford a right of redress for the mere assignment of difficult work. *Dollis,* 77 F.3d at 782. Summary judgment is GRANTED with respect to these claims.

> FN7. Tarley also fails to meet her burden with respect to element (iv), namely that other Adjuster Trainees were treated more favorably. *Urbano,* 138 F.3d at 206. To wit, Tarley testified that the case load for every Adjuster Trainee was the same, that an effort was made by her supervisors at Crawford to equalize assignments among the Adjuster Trainees, and that variations in work load were only attributable to the ratio between an Adjuster Trainee's new

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2000 WL 276813 (N.D.Tex.)
(Cite as: 2000 WL 276813 (N.D.Tex.))

Page 6

cases and closed cases. (*See* Def.App. 80-81).

D. *Five-Percent Raise in April 1996*

Tarley next complains that the five-percent raise she received in April 1996, in connection with a promotion to Claims Adjuster, was discriminatory. Tarley alleges that Kathryn Culver, a Caucasian woman, was promoted to the same position at the same time, but received a ten-percent raise. [FN8] (Pl. Br. at 13; Def.App. 83). According to Tarley, her raise was lower than Culver's on account of Tarley's race and/or national origin. As part of her *prima facie* case for this claim, Tarley must demonstrate that her raise was lower than Culver's under otherwise substantially identical circumstances. *Barnes v. Yellow Freight Sys., Inc.*, 778 F.2d 1096, 1101 (5th Cir.1985).

> FN8. Tarley also appears to claim that two other individuals were promoted during this same period, and received twelve-precent raises. (Pl. Br. at 13). However, because her submissions to the Court contain absolutely no information on these individuals, this aspect of the claim is considered to be waived. (*See also* Pl.App. 83).

*7 Crawford responds with uncontested evidence that Culver was evaluated more favorably than Tarley (*see* Def.App. 93), and asserts that this difference accounts for the raise differential. (Pl. Br. at 15). It is also undisputed that Culver's supervisor at the time of her promotion was different from Tarley's supervisor when Tarley was promoted. (Def.App.89-90).

Based upon these uncontested facts, it cannot be said that the circumstances surrounding the raises were "substantially identical." As stated above, it is not unlawful discrimination to treat differently-situated people differently. *Walton*, 119 F.3d at 373. Indeed, Tarley admits that Culver was evaluated more favorably than she was, and by a different supervisor. Such differences underscore Tarley's failure to make a *prima facie* showing, and persuade the Court that summary judgment should be GRANTED with respect to the April 1996 pay-raise claim.

E. *Failure to Give Performance Evaluations*

Starting in October 1996, according to Tarley, she was denied a scheduled performance evaluation which was a prerequisite for being promoted from Claims Adjuster to Claims Adjuster II. (Def.App.45, 48). However, Tarley testified that the scheduled date for the evaluations was twice pushed back for *all* Claims Adjusters pursuant to a Crawford management directive. (Def.App.46, 49). Tarley knows of no Claims Adjuster who was evaluated before the revised dates set by management. (Def.App.47-48, 50).

This claim fails for at least two reasons. First, a position-wide moratorium on evaluations does not constitute an ultimate employment decision subject to redress under the discrimination statutes. *Dollis v. Rubin*, 77 F.3d at 779. Second, Tarley, by her own admission, was not treated differently from any other Claims Adjuster when "denied" her evaluation. Summary judgment with respect to this claim is GRANTED.

F. *Probation in December 1996*

Finally, Tarley alleges that Crawford discriminated against her by placing her on probation for a period of thirty days. (Def.App.54). Crawford management told Tarley that they had received complaints by two claimants, alleging that Tarley wrongfully denied them benefits, used foul language and was otherwise rude while on the telephone. (Def.App.53). The probation ended after thirty days without further incident or allegation. (Def.App.58-59).

This claim cannot survive Crawford's summary judgment motion. Tarley altogether fails to demonstrate either that she did not violate the company policy or that, if she did violate the policy, white employees who engaged in similar conduct were not punished similarly. *Mayberry v. Vought Aircraft*, 55 F.3d at 1090. Furthermore, probation is merely an "interlocutory or mediate decision," not an ultimate employment decision as contemplated by Title VII. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir.), *cert. denied*, 118 S.Ct. 336 (1997). Summary judgment on this claim is GRANTED.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2000 WL 276813 (N.D.Tex.)
(Cite as: 2000 WL 276813 (N.D.Tex.))

Page 7

### IV. TARLEY'S BURDEN FOR THE RETALIATION CLAIMS

*8 Finally, Crawford seeks summary judgment on Tarley's retaliation claims, which are based on many of the same facts as the discrimination allegations set forth above. For Tarley to prevail on the retaliation claims, she must establish that (i) she engaged in an activity protected by Title VII, (ii) Crawford took an adverse job action against her, and (iii) a causal connection exists between the activity and the adverse action. *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir.1992). On Tarley's making this *prima facie* showing, Crawford would need to demonstrate a legitimate, nondiscriminatory explanation for the adverse action. *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1123 (5th Cir.1998). Once this showing was made, Tarley would have the burden of proving that the adverse job action would not have happened but for her EEOC complaint. *Id.*

#### A. *Discriminatory Salary as Adjuster Trainee / Five-Percent Raise in April 1996*

Crawford now contends that summary judgment is appropriate with respect to Tarley's claims that her salary and pay raise were lower than other employees in retaliation for her EEOC filing. Specifically, Crawford argues that the actions Tarley complains about are not adverse actions under the statute, and, even if they were, Tarley cannot demonstrate the requisite causal connection. (Def. Br. at 19).

The Court agrees. As set forth above in Sections III(B) and III(D), Tarley fails to demonstrate that either her salary or her pay raise were discriminatory, let alone adverse employment decisions. *Shirley*, 970 F.2d at 42; *Walton*, 119 F.3d at 373. As Tarley has not made the requisite *prima facie* showing, summary judgment is GRANTED as to these retaliation claims.

#### B. *Increased Workload / Failure to Give Evaluations / Probation*

Summary judgment is also appropriate on Tarley's remaining retaliation claims, which apply to her complaints regarding increased workload (*see* Section III(C)), failure to give performance evaluations (*see* Section III(E)), and her being placed on thirty-day probation (*see* Section III(F)). As explained in the corresponding sections above, none of these allegations implicate an adverse job action. *Dollis v. Rubin*, 77 F.3d at 779; *see also Mattern*, 104 F.3d at 707 (Title VII's anti-retaliation provision refers to ultimate employment decisions, and not to an interlocutory or mediate decision which could lead to an ultimate decision); *Burger v. Central Apt. Mgmt.*, 168 F.3d 875, 879 (5th Cir.1999) (Title VII's anti-retaliation provision excludes vague harms, and only includes ultimate employment decisions).

Accordingly, summary judgment is GRANTED as to these remaining retaliation claims.

### CONCLUSION

For the reasons stated above, Defendant Crawford-THG's Motion for Summary Judgment is GRANTED.

So Ordered.

2000 WL 276813 (N.D.Tex.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.