

Not Reported in F.Supp.2d
2002 WL 1827659 (N.D.Tex.)
(Cite as: 2002 WL 1827659 (N.D.Tex.))

Page 1

**H**
**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Texas, Dallas Division.

Kimberly N. TAYLOR and Erika Square, Plaintiffs,
v.
NICKELS AND DIMES, INC. d/b/a Tilt at Dallas Alley, and James Love, Defendants.

No. CIV.A.3:00-CV-1461-R.

Aug. 7, 2002.

Female former employee brought action against former employer and male supervisor, seeking, inter alia, damages for sexual harassment and retaliation under Title VII. On employer's motion for summary judgment, the District Court, Lindsay, J., held that: (1) employee was not constructively discharged, and thus did not suffer "tangible employment" action, as would support her Title VII sexual harassment claim; (2) employer was not vicariously liable, under Title VII, for alleged sexual harassment of employee by supervisor; and (3) employee did not establish prima facie case of retaliation under Title VII.

Motion granted.

West Headnotes
[1] Civil Rights ⇌1123
78k1123 Most Cited Cases
(Formerly 78k145)
Female employee, who feared male supervisor would harm her for reporting sexual harassment and that employer would mistreat or fire her, was not constructively discharged, and thus employee did not suffer "tangible employment" action, as would support her Title VII sexual harassment claim; reasonable employee would not have abandoned her employment under circumstances, given employer had begun investigation of complaint and ordered intermediate corrective measures, and employee did not report supervisor's threat to harm her to investigator. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[2] Civil Rights ⇌1189
78k1189 Most Cited Cases
(Formerly 78k167)
[2] Civil Rights ⇌1528
78k1528 Most Cited Cases
(Formerly 78k371)
Employer was not vicariously liable, under Title VII, for alleged sexual harassment of female employee by male supervisor; employer exercised reasonable care to prevent and correct workplace harassment, but employee unreasonably failed to take advantage of preventative or corrective opportunities or to avoid harm otherwise, in that she did not report harassment for several months after it started, never reported any retaliatory conduct which occurred during investigation of complaints, and resigned shortly after corrective measures were taken. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[3] Civil Rights ⇌1246
78k1246 Most Cited Cases
(Formerly 255k30(6.10) Master and Servant)
Female employee did not suffer adverse employment action, as would support her retaliation claim under Title VII; male supervisor's alleged actions, after employee rebuffed his sexual advances, of requiring employee to postpone restroom break, preventing her from leaving work on time on several occasions, and assigning her cleaning duties, as well as his alleged threat to injure her after she reported sexual harassment, did not adversely affect employee's pay, benefits, or level of responsibility. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

MEMORANDUM OPINION AND ORDER

LINDSAY, District J.

*1 Before the court is Defendant Nickels and Dimes Incorporated's Motion for Summary

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 1827659 (N.D.Tex.)
(Cite as: 2002 WL 1827659 (N.D.Tex.))

Page 2

Judgment on Plaintiff Erika Square's Claims, filed October 4, 2001. After careful consideration of the party's briefs, the summary judgment evidence, and the applicable law, the court grants summary judgment on Plaintiff Erika Square's federal law claims and, in its discretion, dismisses without prejudice her state law claims.

### I. *Factual and Procedural Background*

Plaintiff Erika Square ("Square" or "Plaintiff") filed this action against Nickels and Dimes, Inc. ("Nickels and Dimes") and James Love ("Love") (collectively, "Defendants") on July 7, 2000. Plaintiff filed her First Amended Complaint on September 18, 2001, seeking damages for sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.;* assault and battery; false imprisonment; defamation; and negligent hiring, retention and supervision.

Nickels and Dimes owns and operates an arcade known as "Tilt" located in Dallas, Texas. Nickels and Dimes hired Square on October 25, 1998, and Love on April 1, 1998. At all times material herein, Love was Square's supervisor. Square contends Love sexually harassed her during the entire period of her employment with Nickels and Dimes. Specifically, Square states that Love grabbed her buttocks on four occasions, and made a number of inappropriate comments, such as "you have a big ass" and "I'm gonna [sic] get me some of that." She further states that Love invited her to have sex with him, and suggested that she might find work as a stripper in a club owned by one of his associates. Square also avers that prior to her complaint, Love denied her certain benefits of employment by requiring her to postpone restroom breaks, preventing her from leaving work on time, and assigning her cleaning duties. Finally, Square avers that Love reached into her apron and grabbed her crotch area in late February 1999. Throughout this period, Love threatened her and told her not to report his conduct to upper management.

On March 31, 1999, Square states Love ushered her into a back room, closed the door, and refused to let her out. Square further states that Love threatened her with clenched fists and struck her in the breast. Nickels and Dimes contends that Square and Love engaged in an argument after Love instructed her to postpone taking a break until someone could cover for her. Rather than comply with his request, Square yelled at Love and refused to follow his instructions. Following Square's insubordination, Nickels and Dimes Assistant General Manager, Dakwanda Tate ("Tate") terminated Square's employment.

Later that day, on March 31, 1999, Square complained to Michelle Pizio ("Pizio"), Human Resources and Payroll Manager, that Love had sexually harassed her by touching her buttocks and by placing his hand down her apron. In response to these allegations, Pizio reinstated Square's employment, placed her on paid administrative leave until April 6, 1999, and immediately investigated her complaint. Pizio instructed Love not to retaliate against Square, not to have any contact with her, and, if necessary, to have another supervisor interact with Square during her shift. Pizio also rescheduled Square's work shift so that it would not substantially overlap with Love's shift, and arranged for someone other than Love to supervise Square during those periods their shifts did overlap.

*2 Square worked her shift on April 6, 1999, and worked approximately one hour the following day. On April 7, 1999, Pizio interviewed a number of witnesses at Tilt concerning the allegations Square made against Love. According to Square, a coworker informed her that Pizio had "asked a lot of questions" and was "watching [her] every move." Square further states that Love was present at work upon her return and had threatened her with injury. Based on these comments and threats, Love abandoned her employment.

On April 8, 1999, Square filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Commission on Human Rights ("TCHR"), and properly exhausted her claims. Defendant Nickels and Dimes now moves for summary judgment.

### II. *Summary Judgment Standard*

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 1827659 (N.D.Tex.)
(Cite as: 2002 WL 1827659 (N.D.Tex.))

Page 3

if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ragas,* 136 F.3d at 458.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.; see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 & n. 7 (5th Cir.1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322-23.

III. Analysis

A. Sexual Harassment

*3 Title VII prohibits an employer from discriminating against any individual with respect to compensation, term, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). In *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), the United States Supreme Court articulated the framework a trial court must follow when analyzing supervisor sexual harassment suits. Under this framework, a district court must first determine whether an employee has suffered a tangible employment action. *Casiano v. AT & T Corp.,* 213 F.3d 278, 283 (5th Cir.2000) (stating the determination of whether an employee has suffered tangible employment action is the "indispensable first step in every supervisor sexual harassment/vicarious liability case under Title VII"). If the employee has suffered a tangible employment action, the court will analyze the suit as a "quid pro quo" case. *Casiano,* 213 F.3d at 283. If the employee has not suffered a tangible employment action, the court analyzes the suit as a "hostile environment" case. *Id.* at 284.

1. Quid Pro Quo

[1] A "tangible employment action" is "an official act of the enterprise, a company act," such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth,* 524 U.S. at 761. A resignation is a tangible employment action under Title VII only if the resignation qualifies as a constructive discharge. *See Brown v. Kinney Shoe Corp.,* 237 F.3d 556, 566 (5th Cir.), *cert. denied,* 534 U.S. 817, 122 S.Ct. 45, 151 L.Ed.2d 17 (2001); *Webb v. Cardiothoracic Assocs. of North Texas, P.A.,* 139 F.3d 532, 539 (5th Cir.1998). To establish constructive discharge, a plaintiff must demonstrate that the employer made her working conditions so intolerable or unpleasant

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 1827659 (N.D.Tex.)
(Cite as: 2002 WL 1827659 (N.D.Tex.))

Page 4

that a reasonable employee would feel compelled to resign. *See Ward v. Bechtel Corp.,* 102 F.3d 199, 202 (5th Cir.1997); *Barrow v. New Orleans S.S. Ass'n,* 10 F.3d 292, 297 (5th Cir.1994); *Ugalde v. Mckenzie Asphalt Co.,* 990 F.2d 239 (5th Cir.1993). A court may consider the following factors, among others, to determine whether an employee was constructively discharged:

(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not.

*Barrow,* 10 F.3d at 297. "These factors must reveal the existence of aggravating circumstances that justify the employees resignation." *Doherty v. Center for Assisted Reproduction, P.A.,* 108 F.Supp.2d 672, 679-80 (N.D.Tex.2000), *aff'd,* 264 F.3d 1140 (5th Cir.2001). The facts necessary to establish a constructive discharge must demonstrate a greater degree of harassment than those required to establish a hostile work environment claim. *See Landgraf v. U.S.I. Film Products,* 968 F.2d 427, 430 (5th Cir.1992). Finally, this standard necessarily requires an objective test. The question that must be determined is not whether the employee in question felt compelled to resign, but whether a reasonable employee would have felt compelled to resign under such conditions. *Guthrie v. J.C. Penney Co.,* 803 F.2d 202, 207 (5th Cir.1986).

*4 Based on the summary judgment evidence, the court concludes Plaintiff has not demonstrated that a reasonable employee would have felt compelled to resign under the conditions she has alleged. Square has not adduced any evidence that Nickels and Dimes demoted her, reduced her salary, reassigned her to menial work, or submitted evidence to establish any of the other aggravating *Barrow* factors set forth above. In support of her claim for constructive discharge, Square states that Love threatened her with injury on April 7, 1999, one day after she returned from paid administrative leave. According to Square, a coworker relayed a threat made by Love, and informed her that Pizio was on the premises interviewing witnesses about the workplace harassment. Based on these comments, Square believed Nickels and Dimes would "fire" or "mistreat" her, and that Love would retaliate against her. In response, Square walked off the job approximately one hour into her shift, and did not inform Pizio or anyone else that Love had threatened her or that she feared for her safety.

The court determines these facts, when viewed in the light most favorable to Square, do not support a claim for constructive discharge. In this case, the facts demonstrate that Square resigned because of the threats made by Love, and because she believed she would be terminated. Nothing in the record substantiates Square's belief that Nickels and Dimes would terminate her. In fact, Nickels and Dimes had instituted measures to correct the harassment, and on the day Square resigned, Pizio was on the premises interviewing witnesses. Moreover, Square never complained to Pizio that Love had threatened her after she had returned from administrative leave. Under these circumstances, the court finds that a reasonable employee would not have abandoned her employment. *See Landgraf,* 968 F.2d at 430-31 ("A reasonable employee would not have felt compelled to resign immediately following the institution of measures ... reasonably calculated to stop the harassment."); *Webb,* 139 F.3d at 539-40 (stating "[p]art of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast"). In sum, the court holds that Square failed to establish that Nickels and Dimes made her working conditions so intolerable that a reasonable employee would have felt compelled to resign. Accordingly, Plaintiff's quid pro quo claim fails as a matter of law.

2. Hostile Environment

Having determined Plaintiff did not suffer a tangible employment action, the court turns to her hostile environment claim. An employee seeking to establish a hostile work environment claim involving harassment by a supervisor must establish (1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a "term, condition, or privilege" of employment. *Shepherd v. Comptroller of Public Accounts,* 168 F.3d 871, 873 (5th Cir.1999); *Watts v. Kroger Co.,*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 1827659 (N.D.Tex.)
(Cite as: 2002 WL 1827659 (N.D.Tex.))

Page 5

170 F.3d 505, 509 (5th Cir.1999). Once the plaintiff makes this showing, an "employer is subject to vicarious liability to a victimized employee," *Watts,* 170 F.3d at 509 (*quoting Faragher,* 524 U.S. at 777), unless the employer successfully establishes both prongs of the *Ellerth/Faragher* affirmative defense. *See Casiano,* 213 F.3d at 284. To prevail on this affirmative defense, the employer must demonstrate that (1) it exercised reasonable care to prevent and correct any such sexual harassment, and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. *See Faragher,* 524 U.S. at 807; *Casiano,* 213 F.3d at 284; *Butler v. Ysleta Indep. Sch. Dist.,* 161 F.3d 263, 269 n. 2 (5th Cir.1998)

*5 [2] The court determines that Nickels and Dimes exercised reasonable care to prevent and correct sexual harassment in the workplace. Nickels and Dimes adduced substantial evidence to establish that it instructs all incoming employees about its nonharassment policy. Nickels and Dimes also posted a notice in the workplace that informed employees to contact Pizio in the event they experience any discriminatory or harassing conduct. Square states that Nickels and Dimes did not instruct her concerning the policy, and further states that she was not able to read the telephone number off the posted notice. Square nevertheless contacted Pizio and reported the harassment on March 31, 1999, after she had initially been terminated for insubordination. Upon learning of Square's allegations, Pizio immediately reinstated Square's employment, placed her on administrative leave, and began to investigate the situation. During the course of the investigation, Pizio instructed Love not to retaliate against Square, to avoid contact with her, and if necessary, to have another supervisor interact with her during her shifts. Pizio also rescheduled the work shifts to minimize Square's contact with Love during her shift, and arranged to have someone other than Love supervise Square. Square concedes that there were no intervening acts of sexual harassment between the date she complained to Nickels and Dimes and the date of her resignation. Based on these uncontroverted facts, the court determines Nickels and Dimes has satisfied the first prong of its affirmative defense.

The court also determines Nickels and Dimes has satisfied the second prong of its affirmative defense. A victim of sexual harassment has a duty to complain so that the employer may remedy the unlawful employment practice. *See Webb,* 139 F.3d at 538-39. "If the victim could have avoided harm, no liability should be found against the employer who had taken reasonable care, and if the damages could reasonably have been mitigated, no award against a liable employer should reward a plaintiff for what her own efforts could have avoided." *Faragher,* 524 U.S. at 807. Square states that Love grabbed her buttocks on her very first day of work on October 25, 1998, but concedes she did not complain to management until several months later. In fact, Square did not report the full extent of the harassment until March 31, 1999, the date she was initially terminated for insubordination. Moreover, Square never reported to Pizio, or anyone else, any of the threats she received after she returned from administrative leave, *even though Pizio was still investigating Square's allegations. See Scrivner v. Socorro Indep. Sch. Dist.,* 169 F.3d 969, 971 (5th Cir.1999) (finding plaintiff's actions unreasonable because she failed to inform employer about harassment when given an express opportunity). Finally, Square resigned her employment with Nickels and Dimes only two days after Pizio instituted corrective measures, and before Pizio had completed her investigation. As set forth above, Square testified that she resigned in the middle of Pizio's investigation because she felt Nickels and Dimes would terminate her or otherwise "mistreat" her. Such an explanation, however, is insufficient to justify Plaintiff's failure to report this conduct. *See Young v. R .R. Morrison & Son, Inc.,* 159 F.Supp.2d 921, 927 (N.D.Miss.2000) (finding "speculative concerns about management inaction" insufficient to justify a plaintiff's failure to complain). Having determined Nickels and Dimes has satisfied both elements of its affirmative defense, the court grants summary judgment in favor of the Defendant on Plaintiff's sexual harassment claim.

C. Retaliation

*6 Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees" who had either availed themselves of Title VII's protections or assisted others in so doing. *See* 42 U.S.C. § 2000e-3(a). To

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 1827659 (N.D.Tex.)
(Cite as: 2002 WL 1827659 (N.D.Tex.))

Page 6

establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that: (1) she engaged in a protected activity; (2) she experienced an adverse employment action following the protected activity; and (3) a causal link existed between the protected activity and the adverse employment action. *Mota v. University of Texas Houston Health Science Ctr.*, 261 F.3d 512, 519 (5th Cir.2001); *Evans v. City of Houston*, 246 F.3d 344, 351 (5th Cir.2001). Plaintiff offers no direct evidence of retaliation. The court therefore assesses Plaintiff's claims under the *McDonnell Douglas* framework. *See Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir.2001).

[3] Upon review of the summary judgment evidence, the court determines Plaintiff fails to establish an adverse employment action. The Fifth Circuit has stated that "Title VII was designed to address ultimate employment decisions." *Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir.1995). Not every decision made by an employer qualifies as an adverse employment action. *Id.* " 'Ultimate employment decisions' include acts 'such as hiring, granting leave, discharging, promoting, and compensating" ' an employee. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir.1997) (quoting *Dollis*, 77 F.3d at 782). By contrast, "interlocutory or mediate decision[s]" which may ultimately lead to an ultimate employment decision are insufficient to establish a prima facie case of retaliation. *Fierros v. Texas Dept. of Health*, 274 F.3d 187, 191 (5th Cir.2001). To hold otherwise would expand the definition of adverse employment action to include actions which have only a tangential effect on the conditions of employment. *Mattern*, 104 F.3d at 708.

Square states that prior to her complaint to Pizio, Love retaliated against her by requiring her to postpone a restroom break, preventing her from leaving work on time on several occasions, and assigning her cleaning duties. In addition, Square states that Love made threatening remarks to her after she had complained to Pizio on March 31, 1999. None of these actions, however, adversely affected Square's pay, benefits, or level of responsibility. *See Watts*, 170 F.3d at 511 (explaining that ultimate employment decisions require a change in compensation, benefits, or responsibilities). Square's allegations therefore do not constitute ultimate employment decisions actionable under Title VII. *See Mattern*, 104 F.3d at 707 (holding verbal threats of being fired, reprimands, missed pay increases, and "[h]ostility from fellow employees" do not constitute adverse employment actions). Moreover, Plaintiff has not demonstrated, for the reasons stated above, that Nickels and Dimes made her working conditions "so intolerable that a reasonable employee would feel compelled to resign." *Ward*, 102 F.3d at 202. In short, Plaintiff fails to adduce any summary judgment evidence to establish that she was constructively discharged, suspended, demoted, transferred, denied a bonus, given another job with significantly fewer responsibilities, or refused a promotion in retaliation for making her complaint. Accordingly, the court concludes Plaintiff has not met her prima facie case for retaliation, and grants summary judgment in favor of Defendant.

D. State Law Claims

*7 The court has jurisdiction over the state law claims only through the exercise of its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c). "[W]hen all federal claims are dismissed or otherwise eliminated from a case prior to trial, [the Fifth Circuit has] stated that [its] 'general rule' is to decline to exercise jurisdiction over the pendent state law claims." *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir.1998) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir.1989)). The relevant considerations are "judicial economy, convenience, fairness, and comity." *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir.1999). The strongest consideration here is that state courts are more familiar with, and better equipped to address, the remaining state law causes of action. The court therefore exercises its discretion and declines supplemental jurisdiction over the remaining claims. Accordingly, the court dismisses without prejudice Square's state law claims against Nickels and Dimes and Love.

IV. Conclusion

For the reasons stated herein, the Defendant Nickels and Dimes Incorporated's Motion for Summary Judgment is granted. Square's federal law claims against Nickels and Dimes are dismissed with prejudice, and her state law claims against

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 1827659 (N.D.Tex.)
(Cite as: 2002 WL 1827659 (N.D.Tex.))

Page 7

Nickels and Dimes and James Love are dismissed without prejudice. Judgment will issue by separate document as required by Fed.R.Civ.P. 58.

2002 WL 1827659 (N.D.Tex.)

**Motions, Pleadings and Filings (Back to top)**
• 3:00CV01461  (Docket)

(Jul. 07, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.