United States District Court
Southern District of Texas
FILED

JAN 3 1 2005

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

MARIA CRUZ GARCIA
    Plaintiff,

v.

CIVIL ACTION NO. B-03-CV-231

R.E.E., INC. D/B/A McDONALDS
A TEXAS CORPORATION
    Defendant.

## PLAINTIFF MARIA CRUZ GARCIA'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW Plaintiff, MARIA CRUZ GARCIA and submits her PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, and would show the Court the following:

### I.
### FACTUAL BACKGROUND AND SUMMARY OF ARGUMENT

This case arises out of employment discrimination against Maria Cruz Garcia primarily on the basis of her race and national origin. There is direct evidence of discrimination in this case by reason of animus statements. Because of direct evidence of discriminatory intent, the

**Plaintiff** *is not* relegated to relying only an inferential finding of discrimination by comparing her treatment to others who were not in her protected class. This is not a case merely claiming a hostile work environment. **This case presents belittlement** by 1) a **racially/national** origin hostile environment, that led to 2) **intentionally menial job assignments**, followed by 3) a discriminatory reduction in hours, and ultimately 4) a constructive discharge. The Plaintiff, a Mexican national of Mexican-Hispanic racial extract/descent was hired by the Defendant to work in a McDonalds restaurant at an entry level position in May of 2001, in San Benito, Texas. The Rio Grande Valley's regional population is largely Hispanic, but that fact does not imply homogeneity within the group. The discrimination complained of in this case arose from the perception that a new, intervening manager assuming control of the Plaintiff formed about her as a Mexican citizen who was an undeserving, unsophisticated, unassimilated, immigrant from a poor, indigenous, undesirable region of Mexico, and this perception was actually expressed to the Plaintiff.

Early in her employment, before the supervising manager who was the primary source of discrimination was transferred to manage the Plaintiff's location, the Plaintiff demonstrated and herself as a capable, eager-to-learn employee and earned a promotion to swing manager. However, over the course of her employment up to and including her termination, the Plaintiff did face discrimination, some blatant in the form of scathing racial/national origin slurs, with other manifestations having a less obvious motivation, such as the assignment of menial duties, training, coarser treatment, reduction in hours, and devaluation of personal rights relative to

other employees. The Plaintiff's promotion to swing manager was countered by the *expressed statement* and pervasive sentiment that she might have been given the title, but she was never going to be afforded the treatment, respect or job assignments commensurate with a manger's position. Ultimately, the Plaintiff was terminated or constructively terminated when her cellular telephone was stolen by two other employees and the Plaintiff was told that she must choose between dropping the charges against those employees, or begin finding another job. The guilt of those employees was first denied by them but later admitted, after the Plaintiff was forced to leave her employment. The Plaintiff and her personal rights were devalued at this juncture just like they had been since Jessica Torres began supervising the Plaintiff and influencing others' opinion about the Plaintiff. It is contended that the guilt of these employees was actually known to Jessica Torres all along from the time of the offense.

II.
**STANDARD OF REVIEW**

The Defendant asserts both that there is no genuine issue of material fact and that Plaintiff cannot establish at least one essential element of every claim. The Defendant cites and states an uncontroversial standard of review but does not include elucidation in employment discrimination cases applicable in the Fifth Circuit. A Title VII and Section 1981 plaintiff can prove that illegal discrimination has occurred by use of either a "pretext" or a "mixed motive" analysis. See Stratton v. Department for the Aging, 132 F.3d 869, 1997 WL 799838, at 7 (2d

Cir. 1997). As will be detailed below, a Plaintiff can prevail with either indirect or direct evidence of discrimination. Indirect evidence compares the employee's treatment to others while direct evidence is evidence that reflects an alleged discriminatory attitude, and the Plaintiff then establishes that the illegitimate factor played a "motivating" or "substantial" role in the challenged employment decision. In this case, the challenged employment action is each of: the job assignments, the hostile environment, the reduced hours of work after a complaint, and the ultimatum to drop theft charges or find a new job.

Under either legal analysis, once there is no question that a Plaintiff is in a protected class and articulates actionable treatment, the burden is shifted to the Defendant to establish an alternative, nondiscriminatory reason for the action complained of. *In the instant case, the Defendant has moved for summary judgment but the Defendant has not even proffered evidence of an alternative, nondiscriminatory explanation for the actions complained of.* The Plaintiff has met her burden for trial, let alone summary judgment. The only evidence before the Court is the Plaintiff's testimony of how she was treated differently, during a period of repeated belittlement about her being Mexican. There is no evidence whatsoever before the Court that disputes what the Plaintiff says. The Defendant sidesteps addressing all relevant deposition testimony, let alone advancing an argument that such evidence nevertheless fails to raise the existence of a genuine issue of material fact with respect to either a "pretext" or a "mixed motive" analysis.

The testimony of the Plaintiff obtained in discovery to date includes statements made that constitute direct evidence of discriminatory treatment. The statements admit on their face of being motivated by national origin/race. A jury could certainly infer that the disproportionate menial job assignments given to Plaintiff even as a manager, the reduction in hours, and the subjugation of her rights at the time of the job ultimatum, all derived from the same discrimination. The testimony of the Plaintiff is the only evidence of any kind offered by the Defendant. Therefore, the testimony of the Plaintiff, when taken in the light most favorable to her, must either admit there is no genuine issue of material fact, or disprove an essential element of each claim. Far from doing either, the only testimony, and the only evidence in the case, presents a convincing case of discrimination.

### III.
### ARGUMENTS AND AUTHORITIES

A.  **Exhaustion of Administrative Remedies.**

Defendant contends that the EEOC charge asserts only national origin discrimination and not race discrimination. Defendant therefore suggests that race discrimination cannot be claimed. Regardless of whether the last amended EEOC charge alleges race discrimination, race discrimination is prohibited by Section 1981, as claimed in the Petition, and there is no evidence offered that the Plaintiff must exhaust any administrative remedies before pursuing her remedy for race discrimination under Section 1981. Defendant argues that the Petition references race discrimination but does not plead facts to support a race discrimination claim.

Actually, the facts alleged tend to show that both national origin and race discrimination occurred, as explained in the Petition and as established by testimony, but regardless, the specificity of the pleading is certainly not the relevant question for a summary judgment and the Defendant is not entitled to summary judgment on jurisdiction grounds when Section 1981 has no requirement for administrative remedy exhaustion.

B.   **National Origin discrimination under Section 1981.**

Defendant's contention that Section 1981 does not cover national origin discrimination advances nothing because Plaintiff also asserts her national origin claim under Title VII and the Texas Labor Code, in any event.

C.   **Harassment, Discrimination and Retaliation under Title VII and the TCHRA.**

i.   Harassment: (Though the Defendant apparently does not attempt to address each of the challenged employment actions of: the job assignments, the hostile environment[1], the reduced hours of work after a complaint, and the ultimatum to drop theft charges or find a new job, the Plaintiff will respond to the points of the Motion in the order presented.) Defendant argues that no hostile work environment can be established because the conduct

---

[1] The Supreme Court has held that "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993)(internal quotation marks and citations omitted); see also Weller v. Citation Oil & Gas Corp., 84 F.3d 191, 194 (5th Cir. 1996) (noting that factors to consider for a hostile work environment claim include "the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance."

complained of was not sufficiently severe and pervasive. Despite the fact that the Plaintiff's deposition is replete with descriptions of hostile statements and actions, the Defendant makes no reference whatsoever to any of those of acts and simply restates case law on what constitutes "severe and pervasive." The Defendant does not even attempt to compare the allegations to case law presented. The conduct described in the deposition testimony is exactly the conduct that "destroys a protected class member's opportunity to succeed in workplace." The Plaintiff's deposition is excerpted herein lists some such statements and acts, with relevant pages attached in their entirety. It warrants mention that national origin and race discrimination can be evidenced even by ill treatment that does not facially admit to such specific bias, and here, due weight should be given to the fact that there is not only one, but a number of statements that are self-contained expressions of bias against being "Mexican."

Maria Cruz Garcia testified of Jessica Torres, her supervisor, which statements were witnessed, of 1) a racially/national origin hostile environment, that led to 2) intentionally menial job assignments, 3) a discriminatory reduction in hours, and ultimately 4) a constructive discharge. The excerpts further show the Defendant's indifference in responding to complaints:

1)  (Garcia Dep. 47:3-12)

    Q. Okay. Tell me the first thing you remember being said that you're complaining about.

> A. **The first one that hurt me was that she said that she didn't know** why me not knowing **English and being from Mexico, and the others** were from here and knew English, **they were paying me more and the others were earning** less, that without **English, that she did not want me and that she was going** to return me to get my little **rag and start off as I had started.** (After Plaintiff was already a manager.)

2) Days later the Plaintiff told Jessica Torres she was studying English in classes and was told: (Garcia Dep. 48:4-6)

"She answered **that even if I learned English, that the cactus on my forehead was** not going to go away, **that with English, the cactus was not going to go away.**"

(The reference meant that the Plaintiff, who was from Tulancingo, Mexico, would never be held in higher esteem than a peasant, and that knowing English would make no difference.)

3) Torres demeaned Plaintiff to subordinates: (Garcia Dep. 49:4-8)

"When we were **making the order, since I was the manager and the others were** the workers, she put me – only me right beside her to make all of the orders, and in front of all the workers she would tell me that I was worth potatoes."

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT   Page 8**

4) After denying the Plaintiff a break period but giving a break to the others, Torres said: (Garcia Dep. 53:4-7)

"Here what I say is going to be done because we are not in Mexico. We are in the United States. And here I am the one that gives the orders."

5) (Garcia Dep. 53:22-24)

"I cut my hair and she criticized me that with that haircut, I looked from Mexico – from a small town in Mexico."

6) Plaintiff complained and was ignored: (Garcia Dep. 51:17-20)

   Q. Did you ever talk to Rolando about any of the things you have just told us?

   A. **I told Rolando the day. Yes, I told him. He did not take me** into account.

7) Plaintiff brought her son into the restaurant once: (Garcia Dep. 57:19-22)

"...I told her that he was my son. And she answered that the boy was from here, that he was not Mexican because he was very pretty to be my son."

8) Plaintiff reported to Torres that two employees were hiding and then stealing bags of food: (Garcia Dep. 57:12-14)

"...she told me that she did not want to know any gossip, for me to go to work."

9) Torres assigned menial tasks that even Torres' supervisor disapproved of a manager doing: (Garcia Dep. 57:24-25; 58:1-9)

"...She would send me to clean the bathrooms, being a manager. She would send me to mop. And I would tell her one day when Rolando found me – saw that I was cleaning, he called my attention and he told me that it was not my job to be cleaning because if not, he was going to fire me, because that was not my job.

And she told me that there, she was the one that gave the orders, that when she ordered me, that I had to do it. If not, she was going to fire me."

10) The Plaintiff's hours were cut: (Garcia Dep. 76:4-7)

Q. He reduced your hours?

A. Yes. Because I asked him why he was being mean and taking my hours away, and he answered that because they were orders from Jessica.

11) When the Plaintiff's cell phone was stolen and she offered proof to the Defendant about the culprits, she was accused of starting a scandal and her rights were subjugated to the employees who had stolen the phone: (Garcia Dep. 91:18-25; 92:1-3)

"...And he repeated again that that was the only option, to withdraw the charges or look for another job.

Q.   And what did you do?

A    I told him that I did not know that when one defended one's rights, one would be fired from their job. I said, "Because you have not seen and you do not want to listen of what I am telling you of the way that they treat me for not knowing English and for being Mexican.

**He answered, 'I am also Mexican.'"**

Defendant suggests in MSJ Paragraph 19 that another employee, Area Manager Rolando Gonzalez was also Mexican, and that if the Plaintiff was not aware of him also being mistreated, then that must mean the Plaintiff "admits the environment was not hostile and due to race or national origin." The argument is wholly spurious, no employer discriminates at every single opportunity. By coincidence, this was also the fallacious reasoning expressed by Rolando Gonzales, Jessica Torres' supervisor, in similarly dismissing the Plaintiff's final discrimination claims, as quoted above.

The Plaintiff's excerpted deposition testimony is not placed in dispute by any other evidence, and it does not contradict itself. The Plaintiff testified that she was reduced to tears and distraught about her treatment. The testimony establishes that the there was a hostile environment in both words and actions based <u>expressly</u> on national origin and/or race, that the Defendant knew about it, and that it failed to take remedial action.

The Defendant injects discussion of gender discrimination under the harassment heading. The Defendant contends that if Jessica Torres gave preferential treatment to a paramour, the majority of courts would nevertheless reject a finding of gender discrimination. The "harassment" Plaintiff claims to have created a hostile work environment that is at the heart of this case is based on race and national origin animus, not gender-based animus. The harassment at issue should not be side-stepped by irrelevant discussion on gender harassment, as that has never been her contention. Plaintiff believes that both national origin/race and gender discrimination existed but that the former predominated as a motive, and therefore her claim does not rely in gender discrimination. The Plaintiff does not waive a disparate treatment claim on the basis of gender, but simply contends the Defendant's case-law citations do not go so far as to preclude the claim in summary judgment.

ii. <u>Constructive Discharge</u>: Indeed this is an important issue. The Plaintiff contends this is a case of belittlement that continued to escalate by 1) a racially/national origin hostile environment, that led to 2) intentionally menial job assignments, followed by 3) a discriminatory reduction in hours, and ultimately 4) a constructive discharge. The Defendant contends that Plaintiff quit her job, but is merely stated as argument by counsel, despite the fact that twice in her deposition Plaintiff explains how she was forced to quit. Where is the summary judgment evidence that eliminates the existence of a genuine issue of material fact? The Defendant has no summary judgment evidence that the Plaintiff voluntarily quit her job.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**   Page 12

Even if counsel's bare assertion was deemed "evidence" all that means is that there is indeed a genuine factual dispute. The only evidence on this issue is the Plaintiff's testimony that she was given the choice of dropping the theft charges or finding another job, as set forth above in Garcia Dep. 91:18-25; 92:1-3. Defendant contends that constructive discharge must include an "aggravating" factor, which is exactly what happened. The ultimatum Defendant placed Plaintiff under came *after* she had already experienced each of: menial job assignments, the hostile environment, and the reduced hours of work. She had also seen firsthand that all her complaints about herself, and others stealing food, ignored (Garcia deposition excerpts, *supra*.) The Defendant has certainly not precluded the existence of a genuine issue of material fact on constructive discharge.

    iii.   <u>Adverse Employment Action:</u>   The requirement that Plaintiff show adverse employment action is not controversial, and the Plaintiff has more than amply done so. Each of: intentionally bestowed menial job assignments, a discriminatory/retaliatory reduction in hours, and constructive discharge are admitted forms of adverse employment action. The Defendant as the moving party must show that no genuine issue of material fact exists with respect to each action. Yet again, there is no summary judgment evidence to dispute, let alone preclude the claims of adverse employment action. The Defendant agrees that constructive discharge, as well as other acts, constitute adverse employment action. The Defendant contends that conflict and being disciplined motivated the Plaintiff to quit. This is a bare assertion of counsel with no evidence offered. Further, the Defendant must know that

this assertion conveniently ignores Plaintiff's deposition (Garcia Dep. 91:18-25; 92:1-3) wherein she states the ultimatum given to her to drop the charges or find a new job, after a chain of other adverse acts, such as menial tasks and reduced hours, which themselves constitute adverse employment action. The Plaintiff never says that discord made her quit and testified at least twice that she would have remained employed until she retired.

Further, the Plaintiff establishes at least twice in her deposition that both Jessica Torres and her supervisor gave the Plaintiff the ultimatum, that discipline was a non-issue – dropping the charges was the issue, the first instance described above and the second being: (Garcia Dep. 37:11-21)

Q.   What day was it that you claimed you were fired?

A.   I don't remember the day.

Q.   And who was it that you say, "with what they said, they fired me"? Who is "they"?

A.   Jessica and Rolando.

Q    Did anyone say to you, "You are fired"?

A.   Well, they told me to look for another job.

Q.   Okay. Who told you what?

A.   Jessica and Rolando.

Q.   Were they together when that was said?

A.   Yes.

Plaintiff's employment was terminated because her rights to vindicate a theft of her own personal property, a cell phone, were subjugated to another employee, when Plaintiff's supervisor told her that she must drop the charges or she would be fired. The relative subjugation of one person's rights compared to another is certainly one of the innumerable ways that discrimination can be manifest, and there is no argument offered by Defendant to the contrary. In the "direct evidence" of discrimination analysis described above, Plaintiff is entitled to advance the inference that the animosity in question also motivated the job ultimatum being placed on her. Without so much as a hint of an alternative reason for the ultimatum being offered, this is a classic issue of fact for trial.

D.   **The Retaliation Claims.**

Defendant contends that in (Garcia 53:8-25) contains an admission that Plaintiff "did not report the alleged discrimination and harassment to the area Manager." In fact, the entire excerpt IS a recounting of Plaintiff reporting to Rolando Gonzales discrimination.

Defendant contends that that (Garcia 54:17-23) contains an admission that Plaintiff "did not even tell Torres that she found the behavior offensive." This assertion is disingenuous; in that excerpt, the subject of the questioning is only the exchanges about the cell phone. The Plaintiff had numerous exchanges with Torres on the broader offensive conduct, one of which appears at (Garcia 110:1-25) where the Plaintiff humbly tells Torres

how hurt she was by the threat of losing her swing management job and relegation to kitchen helper status when Torres said she would demote her back to helper with a small cloth to clean. The Plaintiff told Torres at that moment she felt such sadness she thought she might faint, and Torres quipped back, **"Well faint. The only thing that I have to do is give you a slap and pick you up."**

Defendant contends that a retaliation claim fails because Plaintiff did not 1) engage in any protected activity and 2) suffered no adverse employment action. On point one, Plaintiff does not contend actionable "retaliation" under Title VII arose from reporting the phone theft, *per se*, and Defendant knows this. Rather Plaintiff contends that Defendant's insistence she drop the charges was an ultimatum placed on her only because her personal rights were seen as trivial, and that view was motivated by lower esteem for her because of her national origin.

With respect to element (1) the "protected activity" that the Plaintiff engaged in was complaining about her treatment, which has been cited herein above on several occasions and clearly appears at (Garcia 53:19-25). This act perturbed her supervisor and drew menial job assignments and a reduction on hours.

With respect to element (2), Defendant argues that a "threat" of a job loss is not adverse employment action, and cites a case saying verbal threats of being fired, reprimands

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT   Page 16**

etc. are not adverse employment action. An ultimatum is not a "threat" of a job loss, period. An ultimatum, as presented in this case, is either an actual or constructive discharge, and as stated above, there is no argument that constructive discharge is adverse employment action.

E.   **Negligence.**

Defendant's argument admits that if Torres' conduct was or should have been known to Defendant, then Defendant could negligent in retaining or supervising her. Defendant relies on the assumption it did not know she was unfit or incompetent, and that Plaintiff did not apprise it of such. Plaintiff has testified that she complained. Note that Defendant states in this Motion that Defendant would have had no reason to suspect Torres was unfit or incompetent, but this statement is not summary judgment evidence of the truth of this assertion under Rule 56, and even it were, it would merely raise a fact question, because Plaintiff testified to the contrary.

**Negligent investigation**:   The Plaintiff does not waive a negligent investigation claim, but simply contends the Defendant's case-law citations, in which relied upon case is apparently not attached, do not go so far as to preclude the claim in summary judgment. Defendant relies on a legal conclusion without contesting the existence of a necessary element or material fact issue, so Plaintiff will not rebut what has not been raised.

**Negligent supervision**: The Plaintiff does not waive a negligent supervision claim, but simply contends the Defendant's case-law citations do not go so far as to preclude the claim in summary judgment. Defendant relies on a legal conclusion without contesting the existence of a necessary element or material fact issue, so Plaintiff will not rebut what has not been raised. Critically, the Plaintiff is not merely suggesting that Defendant negligently supervised Torres in allowing Plaintiff to be fired, which is the holding and sole issue the cited case deals with.

**Intentional infliction of emotional distress**: Defendant assumes that the mere termination of the Plaintiff is the basis for the claim of intentional infliction of emotional distress. Defendant cites cases that suggest wrongful terminations do not necessarily invoke this tort, and Plaintiff agrees. Plaintiff contends and will show that the guilt of the employees who had stolen her phone was known and covered up, while at the same time Plaintiff was in bad faith being accused of starting a scandal, and that the manner in which this was carried out and statements made in conjunction with it rose to the level of extreme and outrageous conduct. Defendant does not urge that there is no genuine issue of fact in *this* regard.

**Defamation:** Defendant assumes without evidence that all possibly defamatory statements were subject to a qualified privilege. It is undisputed that the police were involved in this theft's investigation. Certain statements made in connection with the investigation were

undoubtedly in the scope of employment of the employees, were about the Plaintiff, and were false.

**Civil Conspiracy:** Plaintiff believes that the facts supporting such claim exist but does not assert an independent cause of action for this as a separate claim.

## CONCLUSION

Defendant's Motion for Summary Judgment should be granted with respect only to Civil Conspiracy and **DENIED** with respect to all other matters.

Respectfully submitted,

BREWER ANTHONY
IDDLEBROOK & DUNN P.C.

BY: _____
David R. Joe
State Bar No. 24003872
Federal #34002
1702 E. Tyler Street, Ste. 1
Harlingen, Texas 78550
Telephone (956) 428-5500
Facsimile (956) 428-5518
**ATTORNEY FOR MARIA GARCIA**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Response was served in accordance with the Federal Rules of Civil Procedure this 28th day of January, 2005, on counsel of record:

Tonya Beane Webber
Porter Rogers Dahlman & Gordon
One Shoreline Plaza
800 North Shoreline, Suite 800
Corpus Christi, Texas

DAVID R. JOE